**In re Jose M. GONZALEZ a/k/a Jose Manuel Gonzalez a/k/a Jose Gonzalez and Ana M. Pino a/k/a Ana Maria Pino a/k/a Ana Pino, Debtors.**

Bankruptcy No. 96–14624–BKC–AJC.

United States Bankruptcy Court,
S.D. Florida.

Feb. 13, 1997.

Robert C. Meyer, Coral Gables, FL, for Universal.

Nancy N. Herkert, Hialeah, FL, Daniel J. Gibbons, Miami, FL, for Debtors.

### MEMORANDUM ORDER ON GRANTING UNSECURED CREDITOR'S OBJECTION TO CONFIRMATION

A. JAY CRISTOL, Chief Judge.

On January 28, 1997, a Chapter 13 Confirmation Hearing was held on the Debtors' second amended plan, and upon review of the plan, and listening to argument of counsel on this objection to the same, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Debtors voluntarily filed bankruptcy under Chapter 7 of Title 11 United States Code on July 26, 1996. After that, an adversary was brought against the Debtors under 11 U.S.C. § 523 by an unsecured creditor, Universal Service Credit Union ("Universal"). The Debtors, on the deadline for response to the adversary converted this case to Chapter 13 on November 1, 1996. The First Meeting of Creditors for the Chapter 13 petition was held on January 9, 1997 and an objection was filed to the plan by Universal. The plan paid only $22.77 a month for 36 months to creditors. Between the time of the First Meeting (Chapter 13) and the time of the Chapter 13 Confirmation Hearing, an amended plan was filed. The Debtors increased the payment of their original plan to $243.56 for the first two months and $251.29 each month thereafter for a period of 34 additional months. This was done although the income remained the same.

2. The First Amended Plan called for payments to be made to a secured creditor, the condominium's home owners association, of $19.44 each month for a period of 36 months, payments to the Internal Revenue Service of $118.52 for two months for a total of $237.04, and payments to Sallie Mae for a government guaranteed student loan which was originated less than 7 years ago ("student loan" hereafter). Sallie Mae was to be paid $62.76 for the first two months and $180.24 for the 3rd month through the 36th month. The monthly payment to the general unsecured creditors was $20.70 for 36 months for a total of $744.96. The approximate prorated dividend to the unsecured creditors was 6%. The dividend to be paid to the student loan was 100% of the claimed amount of $6,525.90.

3. The issue before the court is whether a plan that proposes to classify separately and fully repay a nondischargeable student loan discriminates unfairly against other unsecured creditors who will receive only partial repayment of their dischargeable claims.

4. This issue is of recent origin because the 1990 amendments to the Bankruptcy Code made student loans nondischargeable in Chapter 13 proceedings. *See* 11 U.S.C. § 1328(a)(2) incorporating 11 U.S.C. § 523(a)(8). Prior to the 1990 amendments, debtors did not need to discriminate in light of the fact that they could discharge the student loan debt in Chapter 13. However, that no longer is true.

5. Chapter 13 debtors have proposed, and many courts have approved, separate classifications for certain parties: (a) landlords; (b) attorneys; (c) doctors; (d) trade creditors; and (e) banks extending credit necessary for the continued operation of a Chapter 13 debtor's business. *See In re Groves* 39 F.3d 212 (8th Cir.1994). Hence, the discrimination right exists in a Chapter 13. There is no automatic denial of a Chapter 13 Plan because of discrimination among the classes. Instead, the statutory prohibition of 11 U.S.C. § 1322(b)(1) requires one to discriminate "fairly" as opposed to "unfairly."

6. The core of the issue is that the Courts, as opposed to Congress, must define or determine whether the discrimination is "unfair" or "fair." It is only the "unfair" discrimination that permits an objection by an unsecured creditor to object to the confirmation of the plan.

7. It is understood that certain discriminations have greater public policy considerations than others. For instance, child support claims may be discriminated and paid in full while the general unsecured creditors

receive only a percentage of their claim. *See In re Beverly,* 196 B.R. 128 (Bankr.W.D.Mo. 1996) and cases cited therein. A child's needs exceed those of the general unsecured creditors. However, the Debtors have not brought about a public policy argument that dictates that the student loan creditors' rights exceed those of the general unsecured creditors. If the Court were to rule that this discrimination is "fair," then the unsecured creditors would be penalized by subjective reasons which are not enforceable by the statutory language existing in the Bankruptcy Code, as amended in 1990 which prohibit certain student loans from being dischargeable under 11 U.S.C. § 523(a)(8) as incorporated by 11 U.S.C. § 1328(a)(2).

8. The test of "fair" as opposed to "unfair" discrimination really brings about a great paradox and "fair discrimination" can be viewed as an oxymoron codified by the Bankruptcy Code. As one author wrote:

> Congress' use of the phrase 'discriminate unfairly against any class' of the secured claims, without so much as a hint as to the criteria by which to test the 'unfairly' concept, tells us that Orwell's *Animal Farm* is at work here (some discriminations are more equal—or rather more unequal—than others), but it offers no clue to a principled definition by which to judge all plans that debtors may seek to devise, to see which of them may discriminate 'fairly' rather than 'unfairly.'

*See McCullough v. Brown* 162 B.R. 506, 515 (N.D.Ill.1993)

9. Arguments are made that the entire concept of a Chapter 13 is to give a debtor a fresh start. However, when Congress amended the Code in 1990, the nondischargeability of the student loans did not necessarily give debtors a fresh start. It just gave them a better opportunity to make payments of those debts which are not dischargeable. Debtors have attempted to eliminate this problem by discriminating payments to the nondischargeable debts and leave the remainder to unsecured creditors, but payments to student loans are not deemed by the majority to be a "fair" discrimination.

10. An analysis of the cases regarding the "fair" or "unfair" discrimination for student loans is outlined below.

| CASE | STUDENT LOAN | PERCENTAGE TO GENERAL | DECISION |
|---|---|---|---|
| Groves v. LaBarge, 160 B.R. 121 (E.D.Mo.1993) | 100% | 10–40% | unfair |
| In re Benner, 156 B.R. 631 (Bankr.D.Minn.1993) | 100% | 19% | unfair |
| In re Bernal 189 B.R. 507 (Bankr.S.D.Ca.1995) | 100% | 25% | unfair |
| In re Boggan, 125 B.R. 533 (Bankr.N.D.Ill.1991) | 100% | 15% | fair |
| In re Brown, 152 B.R. 232 (Bankr.N.D.Ill.1993) | 100% | ? | fair |
| McCullough v. Brown 162 B.R. 506 (N.D.Ill.1993) | 100% | ? | unfair |
| In re Chapman, 146 B.R. 411 (Bankr.N.D.Ill.1992) | 100% | 10% | unfair |
| In re Christophe, 151 B.R. 475 (Bankr.N.D.Ill.1993) | 100% | 37% | unfair |
| In re Colfer, 159 B.R. 602 (Bankr.D.Me.1993) | 100% | 10.22% | unfair |
| In re Dodds, 140 B.R. 542 (Bankr.D.Mont.1992) | 100% | 79% | fair * |
| In re Eiland, 170 B.R. 370 (Bankr.N.D.Ill.1994) | 100% | 100% | unfair |

| | | | |
|---|---|---|---|
| In re Eitemiller, 149 B.R. 626 (Bankr.D.Idaho 1993) | 73% | .01% | unfair |
| In re Foreman, 136 B.R. 532 (Bankr.S.D.Iowa 1992) | 100% | 100% | fair |
| In re Gregg, 179 B.R. 828 (Bankr.E.D.Tx.1995) | 100% | 10% | unfair |
| In re Keel, 143 B.R. 915 (Bankr.D.Neb.1992) | 100% | 0% | unfair |
| In re Kolbe, 199 B.R. 569 (Bankr.Md.1996) | 100% | 10% | unfair |
| In re Saulter, 133 B.R. 148 (Bankr.W.D.Mo.1991) | 100% | 10% | unfair |
| In re Scheiber, 129 B.R. 604 (Bankr.D.Minn.1991) | 100% | 3.5% | unfair |
| In re Smalberger, 157 B.R. 472 (Bankr.D.Or.1993) | 100% | 0% | unfair |
| In re Sperna, 173 B.R. 654 (9th Cir. BAP 1994) | 100% | 1.4% | unfair |
| In re Sullivan, 195 B.R. 649 (Bankr.W.D.Tx.1996) | 100% | 3% | fair |
| In re Tucker, 130 B.R. 71 (Bankr.S.D.Iowa 1991) | 100% | 0% | unfair |
| In re Tucker, 159 B.R. 325 (Bankr.D.Mont.1993) | 100% | 29% | fair |
| In re Willis, 197 B.R. 912 (N.D.Ok.1996) | 100% | 10% | unfair |
| In re Groves, 39 F.3d 212 (8th Cir.1994) | 100% | 10% | unfair |

■ 11. The majority position does not permit discrimination for the nondischargeable student loan debt. To treat the unsecured creditors differently would be "unfair" and therefore the plan cannot be confirmed because of its violation of 11 U.S.C. § 1322(b)(1). Only one Circuit Court has reviewed this issue. The Eighth Circuit determined that, "[A]bsent a showing that discriminatory treatment is necessary for the Debtor to complete his Chapter 13 Plan, separate classification of student loan and general unsecured obligations cannot be permitted under the Bankruptcy Code." *See In re Groves* 39 F.3d 212, 215 (8th Cir.1994). The burden is on the Debtors to prove the discrimination is "fair" or "necessary." In this case, the Debtors offered no proof of the discrimination being "fair" or "necessary" and they have failed to meet their burden of proof.

■ 12. The Eighth Circuit reviewed many of the above-referenced decisions entered after the 1990 amendment and concluded that a debtor's right to a clean slate was "unfair" to the general unsecured creditors. The debtor was not to be permitted to accelerate payments on its student loan to the detriment of the unsecured creditor. *See In re Keel*, 143 B.R. 915, 917 (Bankr.D.Neb. 1992) as cited in *In re Groves, supra.* Unsecured creditors, whether they be dischargeable or not, are to be put into one class unless they can be determined to either have the right to receive a hardship discharge of the student loans as provided under 11 U.S.C. § 523(a)(8) or the debt, which may not be prioritized under 11 U.S.C. § 507, can be proven to be of a public policy concern so as to create a judicial priority, as that for child support.

## CONCLUSIONS

Universal Service Credit Union's objection to the 100% payment to the nondischargeable student loan debt ("Sallie Mae"), as attempted by the Debtors in the amended plan is sustained. The proposed plan violates 11 U.S.C. § 1322(b)(1) and the amended plan, as filed is not confirmable. The Debtors are allowed ten (10) days to file an amended plan which does not discriminate for the nondischargeable debt student loan debt.