In re William Cowgill CHANDLER, and Joan Bingham Chandler, Debtors.

Bankruptcy No. 95–1115–JEY.

United States Bankruptcy Court,
D.   New Hampshire.

July 7, 1997.

Joel T. Brighton, Sheehan, Phinney, Bass & Green, Manchester, NH, for Cadle Co.

Peter V. Doyle, Shaines & McEachern, Portsmouth, NH, for Debtors.

David C. Green, Follender, Connors & Green, P.A., Nashua, NH, for First NH Mortgage.

Lawrence P. Sumski, Amherst, NH, trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Chief Judge.

This Chapter 13 case presents the issue of whether the debtors may pay their unsecured student loan creditor the required monthly contractual amount on those loans "outside" of their Chapter 13 Plan, while paying their other unsecured creditors a monthly amount at a lesser percentage of those debts "within" their Chapter 13 Plan.[1] For the reasons set out below, the Court holds that the student loan debts may be paid directly and separately during the 36–month course of the debtors' Chapter 13 Plan on the specific facts presented, i.e., maintenance of the current status of the long-term student loan debt with no acceleration of that debt.

This case came before the Court on August 30, 1996 for hearing on confirmation of the debtors' Amended Chapter 13 Plan filed on July 26, 1996 (Court Doc. No. 22), and on the Chapter 13 Trustee's Motion to Dismiss or Convert filed on September 19, 1995 (Court Doc. No. 13). The Court denied confirmation without prejudice to a second amended plan to be filed by October 4, 1996, took this matter under advisement upon the filing of said further amended plan, and deferred ruling on the motion to dismiss until after a determination of the issues taken under advisement and a ruling on the confirmability of the plan. *See Order*, Bk. No. 95–1115–JEY (Bankr.D.N.H. Aug. 30, 1996)(Court Doc. No. 27). The debtors filed their Second Amended Chapter 13 Plan on October 4, 1996 (the "Plan") (Court Doc. No. 28), and the Court took this matter under advisement.

## THE PLAN

This Chapter 13 case was filed on May 15, 1995. The debtors' unsecured creditors include Education Loan Services, Inc., with two claims for student loan debts totaling $12,636, which have been assigned to the New Hampshire Higher Education Assistance Foundation ("NHHEAF"). The debtors propose a 36–month plan, during which the debtors would pay $8,018.25[2] to the Chapter 13 Trustee for distribution to unsecured creditors, and during which the debtors would pay $7,200[3] directly to NHHEAF on their unsecured student loan debts.

The debtors also propose to make payments outside of the plan to The Cadle Company, which has a judicial lien of $58,228.66, based on two notes secured by a mortgage against the debtors' primary residence. The Cadle Company, in a compromise agreed to by the debtors, has reduced its secured claim to $14,000 with ten percent interest, upon which the debtors will pay $297.47 a month for 35 months, with a final payment of all principal and interest then due during the 36th month. *Second Amended Chapter 13 Plan*, ¶ 2(b)(iii) (October 4, 1996). The Cadle Company's undersecured deficiency claim in the amount of $44,229.00 will be paid as an unsecured claim under the plan.[4] *Second Amended Chapter 13 Plan* at ¶ 2(b)(iii). The debtors' attorney has agreed to limit any fees to be paid by the trustee to $1,000. *Second Amended Chapter 13 Plan* at ¶ 2(a).

Accordingly, under the plan, the following unsecured creditors, with claims totaling

1. The references to provisions for payments "outside" and "within" the plan follows the customary usage of trustees and attorneys involved in these matters although logically everything provided for by a Chapter 13 plan is included within the plan. This would include provisions whether based on section 1322(b)(1) or section 1322(b)(5) of the Bankruptcy Code as here involved. The customary language stems from the fact that payments under a plan may go through the trustee (thus generating a 10 percent trustee fee on those amounts), or may be paid by the debtor directly to the creditor, as may be allowed by the Court per section 1326(c) of the Bankruptcy Code. The Court will henceforth drop the references to "outside" or "within" the plan for clarity of analysis, even though it is sometimes tempting to use the "outside the plan" more concise phraseology.

2. The debtors would pay $267 per month for 11 months, and $203.25 per month for 25 months.

3. The debtors would pay $200 per month for the 36 months of the plan, *Second Amended Chapter 13 Plan*, ¶ 2(d) (October 4, 1996), and then continue the payments for 27 months thereafter to pay the balance.

4. A separate alleged secured claim of $9,914, submitted by The Cadle Company is agreed under the compromise to be treated as an unsecured claim.

$65,041, would receive pro rata dividends from the trustee based on the following claim amounts:

| | |
|---|---|
| Universal Card Services | $ 2,179 |
| Bank One | $ 3,152 |
| Capitol One | $ 5,567 |
| The Cadle Company | $ 9,914 |
| The Cadle Company | $44,229 |

*Second Amended Chapter 13 Plan* at ¶ 2(c).

If the plan is confirmed as filed, the unsecured creditors would receive a dividend of *9.5 percent,* after allowance of a 10 percent trustee commission and allowance of a priority claim for $1,000 in attorney's fees. If the Court denied confirmation and ruled that the debtors could not differentiate in their treatment of their student loan debts from their other unsecured creditors, and the student loan creditor was required to be treated as part of the unsecured creditor class under the plan, the unsecured creditors, including the student loan creditor, would receive a dividend of *16.3 percent,* again after allowance of a ·10 percent trustee commission and allowance of a priority claim for $1,000 in attorney's fees.

The Chapter 13 Trustee contends that the debtors' proposed treatment discriminates unfairly between creditors in contravention of section 1322(b)(1) of the Bankruptcy Code. Specifically, the trustee contends that the debtors' separate classification of their nondischargeable [5] unsecured student loan debts from their other dischargeable unsecured debts, and proposal to pay the entire $200 monthly amount due on their nondischargeable student loan debt directly to NHHEAF, while only partially repaying their other dischargeable unsecured debts through the trustee, discriminates unfairly for the student loan creditor and against the other unsecured creditors.

The debtors respond that their proposed treatment is not unfairly discriminatory, because public policy favors a fresh start for debtors, and because the legislative intent regarding student loans allows for different treatment of student loan debts. The debtors further state that if their student loan debts cannot be paid directly to NHHEAF, then they will be unable to obtain further student loans for their children due to the substantial default on the regular loan payment amount, and they therefore might have to liquidate under Chapter 7 of the Bankruptcy Code, to the detriment of the unsecured creditors. The debtors also note that their proposed treatment is contemplated by other provisions of the Bankruptcy Code.

### *SECTION 1322(b) (1)*

Section 1322(b)(1) of the Bankruptcy Code provides that a chapter 13 plan may "designate a class or classes of unsecured claims ... but may not discriminate unfairly against any class so designated...." 11 U.S.C. § 1322(b)(1). The majority of courts interpreting this statutory section have ruled that the mere fact that student loan debts are nondischargeable is insufficient to justify separate classification and treatment of student loan creditors from other unsecured creditors. See, *e.g., In re Groves,* 39 F.3d 212 (8th Cir.1994); *McCullough v. Brown,* 162 B.R. 506 (N.D.Ill.1993); *In re Gonzalez,* 206 B.R. 239 (Bankr.S.D.Fla.1997) (listing cases); and *In re Colfer,* 159 B.R. 602 (Bankr.D.Me.1993). As explained by the Gonzalez court, "[u]nsecured creditors, whether they be dischargeable or not, are to be put into one class unless they can be determined to either have the right to · receive a hardship discharge of the student loans ... or the debt ... can be proven to be of a public policy concern so as to create a judicial priority, as that for child support." *In re Gonzalez,* 206 B.R. at 242 (Bankr.

---

**5.** The debtors have represented that their student loan debts are nondischargeable. *Second Amended Chapter 13* Plan at ¶ 2(d) ("These claims is [sic] non-dischargeable.") However, the dischargeability or nondischargeability of these debts under section 523(a)(8) has not been litigated by the parties or determined by the Court. The debtors apparently are conceding that these debts neither "first became due more than 7 years ... before the ... filing of the petition" nor "will impose an undue hardship" if they are not discharged. *See* 11 U.S.C. § 523(a)(8)(A) and (B). Or the debtors are assuming that the Court will allow them to separately classify these debts under the provisions of section 1322(b)(5), thereby making these debts nondischargeable pursuant to section 1328(a)(1). *See* 11 U.S.C. § 1328(a)(1).

S.D.Fla.1997).[6]

The courts recognize that certain unsecured creditors may be classified separately from others, and that section 1322(b)(1) only prohibits *unfair* discrimination:

"[M]any courts have approved separate classifications for certain parties: (a) landlords; (b) attorneys; (c) doctors; (d) trade creditors; and (e) banks extending credit necessary for the continued operation of a Chapter 13 debtor's business. Hence, the discrimination right exists in a Chapter 13. There is no automatic denial of a Chapter 13 Plan because of discrimination among the classes. Instead, the statutory prohibition of 11 U.S.C. § 1322(b)(1) requires one to discriminate 'fairly' as opposed to 'unfairly.' "

*In re Gonzalez,* 206 B.R. at 240 (Bankr. S.D.Fla.1997), *citing In re Groves,* 39 F.3d 212 (8th Cir.1994). Where public policy considerations are involved, the courts have balanced such considerations against the harm from discrimination to the other creditors:

"It is understood that certain discriminations have greater public policy considerations than others. For instance, child support claims may be discriminated and paid in full while the general unsecured creditors receive only a percentage of their claim. A child's needs exceed those of the general unsecured creditors."

*Gonzalez,* 206 B.R. at 240–241.

In this case, the debtors have put forth the public policy of a "fresh start" for the debtor, which is a strong principle of the bankruptcy laws. However, an equally strong principle is the equal treatment and strict prioritization of creditors and claims, and the debtors "have not brought about a public policy argument that dictates that the student loan creditors' rights exceed those of the general unsecured creditors." *Id.* The

Bankruptcy Court for the District of Maine has aptly observed that:

"Reliance on idealized notions of 'fresh start', divorced from the very statute that provides that fresh start, is inappropriate. Congress has created, defined and limited the fresh start through, inter alia, the Code's discharge provisions. Surely, the bankruptcy laws do effect a fresh start policy. But the same laws significantly limit the fresh start's scope."

*In re Colfer,* 159 B.R. 602, 609–610 (Bankr. D.Me.1993) (footnote omitted), *citing Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–660, 112 L.Ed.2d 755 (1991). The *Gonzalez* court also addressed this "fresh start" contention:

"If the Court were to rule that this discrimination is 'fair', then the unsecured creditors would be penalized by subjective reasons which are not enforceable by the statutory language existing in the Bankruptcy Code, as amended in 1990, which prohibits certain student loans from being dischargeable under 11 U.S.C. § 523(a)(8) as incorporated by 11 U.S.C. § 1328(a)(2).

\* \* \*

Arguments are made that the entire concept of a Chapter 13 is to give a debtor a fresh start. However, when Congress amended the Code in 1990, the nondischargeability of the student loans did not necessarily give debtors a fresh start. It just gave them a better opportunity to make payments of those debts which are not dischargeable. Debtors have attempted to eliminate this problem by discriminating payments to the nondischargeable debts and leave the remainder to unsecured creditors, but payments to student loans are not deemed by the majority to be a 'fair' discrimination."

*Gonzalez,* 206 B.R. at 241.

This Court rules, as a matter of law, that to the extent that the debtors' proposed sep-

---

6. This case does not involve consumer debts of the debtor upon which a non-debtor individual is co-obligated, and the allowance in section 1322(b)(1) for "different" treatment of such claims is therefore inapplicable here. Nevertheless, the Court observes that even in the consumer debt situation, where the debtor is statutorily allowed to treat unsecured consumer claims differently than other unsecured claims, a debtor may not discriminate unfairly, and where the debtor proposes a 6% distribution to non-codebtor unsecured claims while paying 100% on the codebtor claim, the Court has found unfair discrimination. *In re Battista,* 180 B.R. 355, 357 (Bankr.D.N.H.1995).

arate classification of their student loan debt from their other unsecured debts is put forward on the basis that the student loan debt is nondischargeable, that basis for differing treatment constitutes unfair discrimination within the meaning of section 1322(b)(1) of the Bankruptcy Code. Creditors in this particular context need a bright-line test, not a balancing test, to know when discrimination is fair or unfair, so that it is not necessary to litigate every disparate treatment for a determination by the Court as to its fairness. *See McCullough v. Brown,* 162 B.R. 506, 508 (N.D.Ill.1993) ("In the absence of a congressional directive defining (or even fleshing out) the term 'unfairly' ..., courts must at least try to formulate some reasoned approach to assessing fairness vel non—lest the process reduce itself to an ad hoc variant on Justice Stewart's famed 'I know it when I see it' aphorism to identify 'obscenity'.")

■ The "unfair discrimination" test in section 1322(b)(1) is to protect *creditors,* and the only discrimination that can be condoned under this statutory section is discrimination that *substantially* benefits creditors even though some incidental benefit may accrue to the debtor. The United States District Court for the Northern District of Illinois recognized the creditor-oriented focus of section 1322(b)(1):

> "[W]hile the interests of the debtor may not be wholly ignored, this Court concludes that section 1322(b)(1) is ultimately intended as a creditor protection device."
>
> \* \* \*
>
> "Indeed, there is much to be said for a position that the only perspective from which the unfairness of a proposed differential in treatment should be evaluated is that of the disfavored class or classes of unsecured claimants. After all, the drafter of the plan decides whom to favor and whom not to favor in the first instance. Educated self-interest can thus be counted on to avoid any proposal that would operate 'unfairly' against the drafter. And so a court's concern, in implementing what has been stated by Congress, should focus on whether the proposal deals unfairly as to

the discriminated-against creditor class or classes."

*McCullough v. Brown,* 162 B.R. at 510–511. In the present case the attenuated, conjectural "benefit to the creditors" contention put forward by the debtors does not meet the "substantial" benefit requirement in applying the unfair discrimination test.

However, this Court's conclusion that the debtors' proposed treatment of their student loan debts would be unfair discrimination in contravention of section 1322(b)(1) of the Bankruptcy Code, if that were the sole basis for differential treatment, does not completely resolve the matter for decision in this case, due to a further legal question discussed below.

## SECTION 1322(b) (5)

The additional legal issue presented by the debtors is whether separate treatment of their student loan debts can be justified—not on the basis of nondischargeability—but based on the provisions of section 1322(b)(5).

■ Section 1322(b)(5) states that "notwithstanding paragraph (2) of this subsection, [the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Because the initial clause in section 1322(b)(5) provides that "notwithstanding paragraph (2) of this subsection" the plan may provide for the curing of defaults and maintenance of payments, the Court finds that section 1322(b)(5) must be applied consistently with section 1322(b)(1), which requires that a plan "not discriminate unfairly against any class so designated" as an unsecured creditor class.[7] If Congress had wanted courts not to consider whether putting unsecured creditors in a separate class and providing for full monthly payments on the unsecured creditors' claims during the course of the plan constituted unfair discrimination, Congress would have drafted section 1322(b)(5) to read "notwithstanding paragraphs (1) and (2) of this sub-

---

7.  Section 1322(b)(1) does not apply to secured claims.

section, [a plan may] provide for the curing of any default ... and maintenance of payments...." Congress did not draft the statute in such a manner.

▪ Reviewing section 1322(b)(1), the Court finds that it does not prevent discrimination. Rather, section 1322(b)(1) prevents "unfair" discrimination. The Court holds that placing unsecured creditors, like those holding student loans, into a separate class and permitting debtors to maintain their payments to them at the full contract rate, as expressly permitted by section 1322(b)(5), is not "unfair" discrimination. This must be the result intended by Congress; otherwise, how could a debtor's plan provide for the "maintenance of payments" on "unsecured" claims under section 1322(b)(5) if it were considered "unfair discrimination" under section 1322(b)(1). In order to give meaning to both subsections, the Court finds that the discrimination proposed by the debtors in this case is not unfair.

Thus, pursuant to the plain language of section 1322(b)(5), the Bankruptcy Code clearly allows the treatment proposed by the debtors in this case.[8] *See United States v. Ron Pair*, 489 U.S. 235, 240–241, 109 S.Ct. 1026, 1029–1030, 103 L.Ed.2d 290 (1989) (holding that if the statute is "coherent and consistent, there is no need for a court to inquire beyond the plain language of the statute"). The last payment on the debtors' student loans is due in February 2002. The last payment under their Chapter 13 plan is due September 1998. Accordingly, the last payment on the debtors' student loans is due after the date on which the final payment under the plan is due.

Other courts interpreting this statutory section have also held that debtors may use section 1322(b)(5) to justify different treatment of student loan debt under a Chapter 13 plan in order to cure arrearages and maintain payments on their student loan debts during the term of the plan. *See, e.g.,*

*In re Cox,* 186 B.R. 744 (Bankr.N.D.Fla. 1995); *In re Anderson,* 173 B.R. 226, 229 (Bankr.D.Col.1993); *In re Benner,* 156 B.R. 631 (Bankr.D.Minn.1993); *In re Saulter,* 133 B.R. 148, 150 (Bankr.W.D.Mo.1991); *In re McKinney,* 118 B.R. 968 (S.D.Ohio 1990). Clearly, section 1322(b)(5) evidences an intent by Congress to allow for different treatment of long-term debt.

Although section 1322(b)(5) is not limited on its face to situations involving nondischargeable, long-term unsecured debt, the Court notes that in reality only in cases involving student loans and marital debt will section 1322(b)(5) be used, because a Chapter 13 debtor has no reason to "cure and maintain" dischargeable debt. As long as plan payments are being made, unsecured creditors being paid through the Chapter 13 plan can take no action *even* on long-term debt.

In summary, pursuant to section 1322(b)(5) of the Bankruptcy Code, debtors may cure any defaults that exist and may maintain contractual payments as required for long-term unsecured debt, like student loans, during the term of their Chapter 13 plan. Debtors may not accelerate payments or make any payment other than those necessary to cure defaults and keep current on the loan in accordance with the statute. The Court observes that in such cases it may be beneficial to other unsecured creditors to have the debtors make such current payments on long-term unsecured debt directly to the creditor, as permitted by section 1326(c) of the Bankruptcy Code, rather than through the Chapter 13 Trustee, in order to avoid a further reduction of the pool of monies available for other unsecured creditors because of the Chapter 13 trustee's ten percent fee. A separate Order confirming the plan in accordance with this Opinion shall be entered.

---

8. The Court notes that its holding may be nonsensical to the extent that a plan may *not* provide for the maintenance of payments on student loans which become due *during* the term of the plan, because of the long-term length restriction contained in section 1322(b)(5), and because pay-

ment of such student loan claims in full during the course of the plan is unfair discrimination under section 1322(b)(1). The Court finds that this anomalous result must be addressed by Congress.