**In re Melvin COONCE and
Pam Coonce, Debtors.**

**Bankruptcy No. 97–30843.**

United States Bankruptcy Court,
S.D. Illinois.

Sept. 25, 1997.

345

Ronald Buch, Belleville, IL, for Plaintiff.

James W. McRoberts, trustee.

Andrew Miofsky, Granite City, IL, for Debtors.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

At issue in this case is whether the debtors' Chapter 13 plan which separately classifies student loan obligations as long-term indebtedness under § 1322(b)(5) "unfairly discriminates" against other unsecured claims in violation of § 1322(b)(1). Debtors Melvin and Pam Coonce have proposed a Chapter 13 plan which classifies their educational loan debts separately from other unsecured, nonpriority debts and provides for greater payment on these obligations than on the other unsecured debts.[1] The debtors maintain that this separate classification and disparate treatment of student loan debts is authorized by § 1322(b)(5) of the Bankruptcy Code, which allows a debtor to separately classify long-term indebtedness in a Chapter 13 plan.[2]

The trustee objects to confirmation of the debtors' plan on the grounds that the pro-posed plan unfairly discriminates in favor of the student loan creditors. While the trustee concedes that the debtors may separately classify the educational loans, he argues that any such classification is subject to the "un-fair discrimination" requirement of § 1322(b)(1) and that the debtors' plan violates that provision. The trustee maintains, therefore, that the debtors must amend their plan to provide for nondiscriminatory treatment of all unsecured creditors, regardless of how their claims are classified.

## DISCUSSION

Section § 1322 (b)(1) provides that a debtor may separately classify unsecured claims so long as the proposed classification scheme: (1) complies with the requirements of § 1122 and (2) does not discriminate unfairly against any class of claims that is grouped separately.[3] Section 1122, incorporated by reference in § 1322(b)(1), permits a debtor to "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Because this provision does not mandate that all similarly situated claims be classed together, the majority of courts have interpreted § 1122 to allow separate classification of claims. *See, e.g., Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1313 (8th Cir.1987); *Matter of Foreman,* 136 B.R. 532 (Bankr.S.D.Iowa 1992); *In re Sweeney,* BK 92–44947–399 (Bankr.E.D.Mo. Nov. 18, 1992). This Court agrees and finds that the debtors' separate classification of student loan debts in this case is permissible.

The second inquiry of § 1322(b)(1) is whether the debtors' proposed classification

---

**1.** The debtors have two educational loan debts totaling $12,263.67. The trustee calculates that the proposed plan pays student loan creditors 33.1% of their claims while paying other unsecured creditors only 10.56%. Absent the separate classification, all unsecured creditors would receive 16.88%.

**2.** Long-term indebtedness, according to § 1322(b)(5) is "any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). While this provision traditionally has been used as a means

of curing home mortgage defaults, it has been applied in the context of student loans as well. *See In re Sullivan,* 195 B.R. 649 (Bankr.W.D.Tex. 1996)

**3.** Section 1322(b)(1) states, in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, *but may not discriminate unfairly against any class so designated ...*

11 U.S.C. § 1322(b)(1) (emphasis added).

of their unsecured debts unfairly discriminates in favor of the student loan creditors. Discrimination in favor of a particular class of creditors is permitted under § 1322. In fact, many courts have approved separate classifications for certain parties: (a) landlords; (b) attorneys; (c) doctors; (d) trade creditors; and (e) banks extending credit necessary for the continued operation of a Chapter 13 debtor's business. Hence, the discrimination right exists in a Chapter 13 case, and there is no automatic denial of confirmation of a Chapter 13 plan because of discrimination among the classes. Instead, the statutory prohibition of 11 U.S.C. § 1322(b)(1) requires one to discriminate "fairly" as opposed to "unfairly." *In re Chandler*, 210 B.R. 898, 902 (Bankr.D.N.H. 1997), *citing In re Gonzalez*, 206 B.R. 239, 240 (Bankr.S.D.Fla.1997). Therefore, as long as the proposed discrimination is fair, it is not prohibited.

■ Unfortunately, the Code offers no definition of what constitutes "unfair" discrimination under § 1322(b)(1). However, the majority of courts that have interpreted this provision have concluded that discrimination in favor of educational loans based on their nondischargeable nature is unfair and, therefore, violates § 1322(b)(1). *McCullough v. Brown (In re Brown)*, 162 B.R. 506, 509 (N.D.Ill.1993), *rev'g* 152 B.R. 232 (Bankr. N.D.Ill.1993); *see also In re Sperna*, 173 B.R. 654, 660 (9th Cir. BAP 1994), *In re Chandler*, 210 B.R. at 902–03 (holding, as a matter of law, that to the extent nondischargeable nature of debt is basis for discrimination, such basis constitutes unfair discrimination under § 1322(b)(1)). Because § 523(a)(8) of the Code prohibits student loan obligations from being discharged in bankruptcy in most instances,[4] *see* 11 U.S.C. § 523(a)(8), Chapter 13 debtors have a strong interest in reducing such obligations

in their plans. This interest, however, should not be advanced at the expense of their other unsecured creditors. Indeed, from the perspective of unsecured creditors holding dischargeable claims, it would be patently unfair for creditors holding nondischargeable claims— who may thus pursue post-bankruptcy collection efforts against the debtor— to be preferred not only after the bankruptcy case is completed but also during the time payments are being made to creditors. *In re Smalberger*, 157 B.R. 472, 475–76 (Bankr.D.Or.1993), *aff'd* 170 B.R. 707 (D.Or. 1994). Thus, the nondischargeable nature of student loan debts, absent more, is an insufficient basis for treating student loans preferentially,[5] and a Chapter 13 plan cannot be approved that treats unpaid student loans more favorably than other unsecured debts merely because they are student loans. *Cf. Brown*, 162 B.R. at 517–18 (stating that if a plan favoring student loan creditors is to survive scrutiny under the statutory "discriminates unfairly" test, the debtor must place something material onto the scales to show a correlative benefit to other unsecured creditors).

Perhaps because of this prohibition, the debtors in this case have not classified their student loan debts based on nondischargeability. Rather, the debtors have designated these obligations as long-term indebtedness pursuant to § 1322(b)(5). That section provides, in pertinent part, that a plan may

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5). The debtors contend that by expressly allowing a debtor to pay

---

4. Under § 523(a)(8), a student loan is dischargeable only if the debtor's loan first became due more than seven (7) years before the bankruptcy petition was filed or if excepting the debt from discharge will impose an undue hardship on the debtor. Neither of these exceptions is applicable in this case.

5. It should be noted that the majority of courts, including this one, do permit discrimination in

favor of child support obligations despite their nondischargeability. In those cases, there is an overwhelming public policy interest in ensuring that a debtor's children are provided for. *See In re Clifton*, BK 92–30733 (Bankr.S.D.Ill. March 8, 1993); *In re Storberg*, 94 B.R. 144 (Bankr. D.Minn.1988). However, these same policy considerations do not apply in the context of student loan obligations.

long-term creditors according to the terms of their contracts, § 1322(b)(5) essentially sanctions disparate treatment of these claims. The debtors argue, therefore, that the § 1322(b)(1) prohibition against unfair discrimination does not apply in the context of § 1322(b)(5) obligations.

■ This Court has not previously addressed whether Chapter 13 debtors may satisfy the § 1322(b)(1) requirement of "fair discrimination" by separately classifying student loan debt as long-term indebtedness under § 1322(b)(5). The most recent case addressing the application of § 1322(b)(1) to subsection (b)(5) classifications is *In re Chandler,* 210 B.R. 898 (Bankr.D.N.H.1997). In that case, the debtors proposed to pay student loan creditors their monthly contractual amount outside the Chapter 13 plan while paying other unsecured creditors a lesser percentage inside the plan. The trustee objected to confirmation on the basis of unfair discrimination. In response, the debtors maintained that preferential treatment in favor of long-term student loans was not only supported by public policy considerations, but was also contemplated and condoned by other sections of the Bankruptcy Code, specifically § 1322(b)(5).

The *Chandler* court rejected debtors' argument that "fresh start" considerations mandate discriminatory treatment of student loan debts. The court noted that while a debtor's fresh start is a strong principle of bankruptcy law, an equally strong principle is the "equal treatment and strict prioritization of creditors and claims." *Id.* at 902. The court concluded that the debtors in that case had not set forth a public policy argument dictating that student loan creditors' rights exceed those of general unsecured creditors, and held that, at least on the basis of public policy, preferential treatment of the educational loans was not justified.

However, the *Chandler* court did find that preferential treatment of long-term indebtedness was permitted under § 1322(b)(5). While recognizing that classifications under § 1322(b)(5) are subject to the unfair discrimination prohibition of § 1322(b)(1), the court nevertheless determined that, "in order to give meaning to both subsections," it was

necessary to conclude that disparate treatment under § 1322(b)(5) is not unfair. In support, the *Chandler* court relied on a series of decisions that have either held, or stated in dicta, that because the Bankruptcy Code specifically authorizes the separate classification of long-term debts, any classification under subsection (b)(5) is not "unfairly" discriminatory as a matter of law. *See In re Cox* 186 B.R. 744, 747 (Bankr.N.D.Fla. 1995); *In re Benner,* 156 B.R. 631, 633 (Bankr.D.Minn.1993). These courts reason that such discrimination is necessary in order to give effect to § 1322(b)(5). As explained by the *Cox* court,

> [s]ince student loan debt and marital dissolution obligations are the only significant type of long-term [unsecured] debt carried by Chapter 13 debtors, section 1322(b)(5) would be rendered largely ineffective with respect to unsecured debt if student loans could not be treated thereunder solely because the creditor would receive better treatment than other nonpriority unsecured creditors.

*Cox,* 186 B.R. at 746 (quoting *Benner,* 156 B.R. at 634).

This Court agrees with *Chandler* and *Cox* that § 1322(b)(1) *does* apply to obligations designated as long-term debts under § 1322(b)(5). However, it cannot conclude that every such classification satisfies the § 1322(b)(1) test of "fair discrimination" as a matter of law. Rather, the Court finds that this reading of § 1322(b)(5) presumes too much and is inconsistent with the statute's language and intended purpose.

A careful examination of § 1322(b) reveals that its provisions are cumulative unless otherwise provided. An interpretation allowing preferential treatment of student loan debts so long as they are classified as long-term indebtedness under § 1322(b)(5) would render subsection (b)(1) superfluous. Taken to its logical conclusion, such an interpretation would require that any designation or plan provision made pursuant to a subsection of § 1322(b) would be *per se* exempt from the "fair discrimination" requirement of § 1322(b)(1). Obviously, this was not Congress' intent when it drafted § 1322(b).

Congress, in drafting § 1322, created several exceptions to its provisions. The first,

found in the second clause of § 1322(b)(1), specifically provides that co-signed consumer debts are not subject to the anti-discrimination requirement of that section.[6] This exception, added in the 1984 amendments to § 1322(b), allows a debtor to discriminate, even unfairly, in favor of obligations on which another individual acted as co-signer. Bankruptcy Amendment Act of 1984, P.L. 98–353, § 316, 98 Stat. 333, 356 (1984). This was the *only* express exception to § 1322(b)(1) provided by Congress.

Similarly, in 1990, Congress amended § 1328(a)(2) to make educational loan obligations nondischargeable in Chapter 13 cases. Omnibus Budget Reconciliation Act of 1990 (Student Loan Default Prevention Initiative Act), P.L. 101–508, § 3007(b), 104 Stat. 1388, 1388–1328 (1990). Although Congress could have made student loans an exception to § 1322(b)(1) at that time, it chose not to do so. Under the doctrine of *inclusio unius exclusio alterius* (the inclusion of one is the exclusion of another), § 1322, by specifically providing for co-signed consumer debts to be treated separately from other unsecured claims without regard to unfair discrimination, does not allow any other kinds of unsecured claims, including student loans, to be so treated unless such discrimination is fair. *In re Chapman*, 146 B.R. 411, 416 (Bankr.N.D.Ill.1992).

In addition to conflicting with a strict construction of § 1322(b), allowing the debtors to discriminate in favor of student loan creditors would, in effect, create an artificial priority scheme not provided for in § 507(a).[7] Although Congress made student loans nondischargeable, it did not include them in the list of statutory priorities under § 507. If Congress had intended to allow debtors to prefer the holders of student loan obligation at the expense of other creditors, it could have done so by granting a statutory priority— as it did, for example, for certain administrative expenses and taxes. *Brown*, 162 B.R. at 513–14. Since Congress chose not to accord student loan debts a distributional priority under § 507, courts should not in-

voke § 1322(b)(5) to sanction preferential treatment for such obligations simply because they are long-term obligations.

■ Finally, allowing separate classification of student loans based solely on their duration could, in certain instances, produce anomalous results. For example, a student loan with thirty-six monthly payments remaining could not qualify under § 1322(b)(5) and, therefore, would have to be classed with all of the other general unsecured creditors. However, an identical obligation with thirty-seven monthly payments remaining would be entitled to full payment under the plan without any inquiry as to whether the proposed treatment was fair. This Court believes that in order to avoid such situations, as well as to give effect to the plain language of the statute, inquiry must be made as to the fairness of every designation, regardless of how it is classed.

■ Having reached this conclusion, the Court must now examine the proposed classification in this case to determine whether it complies with § 1322(b)(1). The debtors propose to continue regular monthly payments on their student loans while paying other unsecured creditors a pro-rated distribution. Although the debtors maintain that the basis for the distinction is the duration of their student loans, it was clear at the hearing that the actual basis for the classification is the nondischargeable nature of these debts. Because of the nature of student loan debts, a debtor will often have a "mixed" motive for classifying these obligations as long-term indebtedness, with the real incentive being the reduction of his nondischargeable debt burden following bankruptcy. This Court will not permit such an "end run" around § 1322(b)(1) and specifically finds that § 1322(b)(1) prohibits unfair discrimination even when it appears in the guise of treatment of long-term debt under § 1322(b)(5). *Accord In re Taylor*, 137 B.R. 60, 65 n. 6 (Bankr.W.D.Okla.1992).

In this case, it may be possible for the debtors to formulate a nondiscriminatory

---

6. That clause provides that a plan "may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims." 11 U.S.C. § 1322(b)(1).

7. Section 507(a), which sets forth the expenses and claims which are to receive priority in payment, does not include educational loans within its scheme. *See* 11 U.S.C. § 507(a).

plan. The plan at issue proposes to pay student loan creditors approximately three times more than the other unsecured claimants for a period of 36 months. Although the debtors' student loan obligations will continue after completion of the plan, their other unsecured debts will be discharged. As a result, the debtors will have reduced the size of the student loan debt that will survive bankruptcy at the expense of their other unsecured creditors. Discrimination of this magnitude is unnecessary, as the debtors' plan could possibly be amended to eliminate the preferential treatment. In order to effectuate a nondiscriminatory plan, the debtors need only devise a plan that pays the student loan creditors pro rata with other unsecured creditors during the life of the plan and as a continuing obligation thereafter. It is possible, for example, that the debtors could extend the duration of their plan in order to provide the other general unsecured creditors with a greater distribution. Because the Court does not have figures indicating what the effect of an extension would be in this case, it cannot say with certainty that this would be a feasible solution. However, extending the plan's length is an option the debtors need to consider if they are going to formulate a confirmable plan. Additionally, a "non-bankruptcy" alternative would be for the debtors to seek a deferral of their educational loans. Congress has provided for various deferral mechanisms which allow borrowers to defer payment on the loans for up to 36 months for such reasons as unemployment, financial hardship, and disability. *See* 20 U.S.C. §§ 1071 to 1087; 34 C.F.R. § 682.210.

In finding that the plan in this case could possibly be amended to eliminate the disparate treatment, the Court rejects the debtors' argument that favorable treatment of the student loans is necessary because, if funded only by plan payments, accruing interest could increase the amount due on the loans at the conclusion of the plan, thereby undermining the debtors' fresh start. While providing the debtors with a fresh start is one of the fundamental goals of bankruptcy, it is not the only interest entitled to protection. The debtors' fresh start must be balanced against the creditors' right to fair treatment. *Chapman,* 146 B.R. at 419. One of the primary purposes of the Bankruptcy Code is to provide creditors with a fair and orderly method of receiving payment. Because § 1322(b)(1) is essentially a creditor protection device, any proposed classification should be viewed from the perspective of the creditors being discriminated against. The debtors' interest in a fresh start does not justify preferentially repaying student loan obligations to the prejudice of other unsecured creditors. Therefore, the debtors must propose a plan which more equally balances these two competing interests.

In finding that the proposed classification in this case is unfairly discriminatory, the Court is not adopting a *per se* rule that classifying student loans as long-term indebtedness violates § 1322(b)(1). Rather, this determination should be made on a case by case basis, taking into consideration the underlying reasons for the classification. This approach is the only one which gives meaning to *all* of the provisions of § 1322(b), while still protecting the interests of both debtors and creditors.

Therefore, for the reasons stated herein, the trustee's objection to confirmation of the debtors' plan is sustained.