**In re Anthony Ladill FORD, Debtor.**

**Bankruptcy No. 98–21248.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 24, 1998.

George Stevenson, Memphis, TN, Chapter 13 Trustee.

Philip F. Counce, Memphis, TN, for Debtor.

## MEMORANDUM OPINION AND ORDER RE TRUSTEE'S OBJECTION TO CONFIRMATION

G. HARVEY BOSWELL, Bankruptcy Judge.

The plan of reorganization submitted in this case classifies the debtor's unsecured obligation to Shelter Insurance as a long term debt pursuant to 11 U.S.C. § 1322(b)(5). The Chapter 13 Trustee has filed an Objection to Confirmation in response to this classification, alleging that such classification unfairly discriminates against the debtor's other unsecured creditors and, thus, violates 11 U.S.C. § 1322(b)(1).

The Court conducted a hearing on the Trustee's Objection to Confirmation on May 5, 1998. Fed.R.Bankr.P. 9014. Pursuant to 28 U.S.C. § 157(b), this is a core proceeding. The following shall serve as the Court's find-ings. of facts and conclusions of law. Fed. R.Bankr.P. 7052.

## I. FINDINGS OF FACT

The facts in this case are few and undisputed. Sometime prior to filing his Chapter 13 petition, the debtor, Anthony Ford ("Ford"), was involved in an automobile accident. Ford did not have insurance at the time of the accident and, as a result, his driver's license was revoked. The victim in the accident suffered $9818.00 in damages. Because Ford had no insurance, the victim's insurance company, Shelter Insurance ("Shelter"), paid for the damages.

In order to regain his driving privileges, Ford entered into an agreement with Shelter whereby the debtor agreed to reimburse Shelter the $9819 in damages the insurance company had paid to its insured, the accident victim. On April 15, 1997, the debtor executed a promissory note in favor of Shelter in the amount of $9819.00. The note set forth a down-payment of $150.00 and monthly installments of $50.00. The initial payment was due on April 8, 1997, with the monthly installments due on the 30th of each month thereafter. Under this payment plan, Ford was obligated to make on e-hundred-ninety-four (194) monthly payments of $50.00. The last payment under the note would be due in April 2012.

On January 28, 1998, Ford filed a Chapter 13 petition for bankruptcy relief. The Chapter 13 plan submitted in this case calls for a repayment period of sixty (60) months. The proposed plan payments are $215.00 weekly. The filing fee, the Trustee's fee and the debtor's attorney's fee are all to be paid by the plan. The plan lists two special priority debts to Juvenile Court for current child support, two secured home mortgage debts (one is to be paid directly by the debtor), four secured creditors (one is to be paid directly by the debtor), and eleven unsecured creditors.

As a result of the lengthy nature of the promissory note to Shelter, the debtor's plan classifies the obligation as a long-term debt under 11 U.S.C. § 1322(b)(5). The debtor's plan lists Shelter as a secured creditor with a

claim of $9818.00 and calls for monthly payments to Shelter of $164.00.

On March 17, 1998, the Chapter 13 Trustee objected to the debtor's classification of Shelter, alleging that the promissory note is not the type of long-term debt Congress contemplated when drafting § 1322(b)(5). The Trustee also alleged that Shelter's classification as a secured creditor and its high monthly payment under the plan unfairly discriminates against Ford's other unsecured creditors and, as a result, the debtor's plan should not be confirmed.

## II. CONCLUSIONS OF LAW

In order to determine whether or not the Trustee's objection to confirmation should be sustained, the Court must answer several questions. First, whether or not the debtor is entitled to classify his obligation to Shelter as a "long-term debt" under § 1322(b)(5). Second, if the debtor is so entitled, whether or not the manner in which he has classified the Shelter debt is in accordance with § 1322(b)(5). Third, whether or not such classification unfairly discriminates against Ford's other unsecured creditors in violation of § 1322(b)(1). If the debtor is either not entitled to classify the debt as a long-term one or the classification unfairly discriminates, the Court must rule for the Trustee. If, on the other hand, the debtor may classify this debt under § 1322(b)(5), he has done so properly and such classification does not violate § 1322(b)(1), the Court must overrule the Trustee's objection.

### A. The Entitlement to the § 1322(b)(5) Classification

■ Section 1322(b)(5) of Title 11 allows a Chapter 13 plan to:

... provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

1. *See also* 2 King, Collier on Bankruptcy, 1322.09 p. 1322–27 (15th Ed.) ("The right to cure defaults on long term contracts applies to all long term debt"); Delauder, 189 B.R. at 644

11 U.S.C. § 1322(b)(5). This section is allows a debtor to cure any defaults and maintain the regular monthly payments on any contractual debt which has a longer repayment period than the duration of the Chapter 13 plan. Section 1328(a)(1) of Title 11 excepts a debt so designated from the debtor's Chapter 13 discharge. 11 U.S.C. § 1328(a)(1).

Neither the Bankruptcy Code nor the legislative history of § 1322(b)(5) offers much guidance as to what exactly qualifies as a "long-term debt" under § 1322(b)(5). It is not a concept which is defined in the Code and the legislative history simply states that the section is meant to encompass long-term debt, "such as mortgages." H.R.Rep. No. 595, 95th Cong., 1st Sess 429 (1977). In the realm of case law, the section has been applied to unsecured student loans, *In re Chandler*, 210 B.R. 898 (Bankr.D.N.H.1997); *In re Cox*, 186 B.R. 744 (Bankr.N.D.Fla.1995); *In re Anderson*, 173 B.R. 226 (Bankr.D.Col. 1993); *In re Benner*, 156 B.R. 631 (Bankr. D.Minn.1993); *In re Saulter*, 133 B.R. 148 (Bankr.W.D.Mo.1991), mortgages, *In re Bradley*, 109 B.R. 182 (Bankr.E.D.Va.1990); *In re Hayes*, 101 B.R. 569 (Bankr.E.D.Ark. 1989), and retail installment contracts for automobiles, *In re Delauder*, 189 B.R. 639 (Bankr.E.D.Va.1995). In discussing (b)(5)'s breadth, a leading treatise on bankruptcy has stated:

...[T]he section is not limited to home mortgages. It permits the curing of default and maintenance of payments on any secured or unsecured claim, as long as the last payment is due after the last payment under the plan.

5 Norton Bankr.L. & Practice 2d § 121:8.[1]

■ In consideration of the above listed authorities, this Court can find no reason why the unsecured debt at issue in this case cannot be classified as a long term debt under § 1322(b)(5). The debt fits squarely within the plain language of the statute. It is an "unsecured claim" and the last payment on the Shelter note is due some ten years

("Although the most common use of § 1322(b)(5) has been to cure mortgage or student loan defaults, the language is by no means restricted to such debts.")

after the final payment under the plan is due.[2] Both the case law and the treatises interpreting § 1322(b)(5) are in unanimous agreement that the statute applies to *any* contract with a longer repayment period than the plan. It is by no means limited to mortgages and student loans. Additionally, nothing in the legislative history suggests that the section is limited to any certain type of debt. As long as the original repayment period of the contract extends beyond the Chapter 13 plan period, the debt qualifies for § 1322(b)(5) classification.

At the hearing on the objection, the Trustee argued that if the Court allowed Ford to apply § 1322(b)(5) to the unsecured note in this case, subsequent debtors would try to apply the section to unsecured credit card debt. Because § 1322(b)(5) debts are made non-dischargeable by § 1328(a)(1), the Court feels there is, at best, a remote possibility that today's ruling will spurn legions of debtors on to classify credit card debt in such a way. The debtor in the case at bar is electing to make his unsecured debt to Shelter non-dischargeable because he wants to keep his driver's license. What similar incentive is there for other debtors to make unsecured credit card debt non-dischargeable? The Court can think of none. If Ford keeps his driver's license, he can continue driving to work and thereby earn a paycheck with which to make his monthly Chapter 13 plan payments.

**B. The Appropriateness of the Debtor's § 1322(b)(5) Classification**

██ Because the Court has found that the Shelter note may be classified as a long term debt under § 1322(b)(5), the next inquiry the Court needs to make is whether or not the debtor's plan has classified the debt in accordance with subsection (b)(5). There are two basic requirements a § 1322(b)(5) classification must satisfy in order to be approved by a court. First, the debtor's Chapter 13 plan must classify the debt as a "Special Class Unsecured" debt. Second, the Chapter 13 plan may do only two things: (1) provide for

the ongoing monthly payments due under the contract and (2) cure any pre-petition arrearage within a "reasonable time."

██ In the case at bar, Ford's plan classifies the debt to Shelter as "Secured." A § 1322(b)(5) classification does not transform an unsecured debt into a secured or priority claim. What it does do is allow a debtor to create a "special class unsecured" category for any unsecured debt he elects to treat as a long term one under the authority of subsection (b)(5). As a result, before this Court can confirm the debtor's Chapter 13 plan, Ford must amend his plan to provide a separate category for the Shelter debt with the "Special Class Unsecured" heading.

The second requirement for § 1322(b)(5) classification is not met in this case either. As mentioned previously, if a debtor proposes to classify a long term debt under § 1322(b)(5), there are only two things he is permitted to do with that debt under his Chapter 13 plan: (1) maintain regular monthly payments due under the contract and (2) cure any arrearage within a "reasonable time." 11 U.S.C. § 1322(b)(5). He is not permitted in any instance to accelerate payments under the contract. *Chandler*, 210 B.R. at 904 ("Debtors may not accelerate payments or make any payment other than those necessary to cure defaults and keep current on the loan in accordance with the statute."); *In re Chappell*, 984 F.2d 775, 781 (7th Cir.1993) ("When a default on a mortgage or other long term debt is cured under section 1322(b)(5), the full amount of the creditor's claim is not paid during the Chapter 13 cases. Rather, the debtor preserves the benefit of a longer payment schedule which extends beyond the due date of the last payment under the plan, and the creditor is protected by the exception to discharge for long term debts on which defaults are cured."). In essence, what a § 1322(b)(5) classification does is allow a debtor to (1) maintain current monthly payments under a long term contract as if there were no bankruptcy case and (2) use his Chapter 13 plan

---

2. The Chapter 13 plan in this case ends in the year 2002. The original contract term of the

Shelter promissory note ends in the year 2012.

to remedy any arrearage he may have on a long term debt.

The question of what length of time qualifies as "reasonable" under § 1322(b)(5) is not one which is answered by the Code, § 1322's legislative history, or case law. Time periods as short as three months and as long as five years have been held to satisfy the "reasonable" requirement. 8 Collier on Bankruptcy 1322:09. What the various authorities do seem to agree is that the determination is one which is left to the discretion of the court and that the analysis of what is a reasonable time period under § 1322(b)(5) is a highly fact-specific one which will vary from case to case depending on the particular facts and circumstances. *In re Lynch,* 12 B.R. 533 (Bankr.W.D.Wis. 1981). Several courts have developed a list of factors for a court to look to in order to determine how long a debtor can take to cure his arrearage on a long term debt. This list includes:

(1) the debtor's past payment history on the debt at issue;

(2) the total length of the repayment period under the contract;

(3) the reason for the arrearage;

(4) the nature of the collateral;

(5) whether or not the debtor is putting forth their best effort to cure.

*Home Fed. Savings & Loan Assoc. of Sioux City v. Beckman (In re Beckman),* 9 B.R. 193, 196 (Bankr.N.D.Iowa 1981).

In the case at bar, Ford's plan calls for a monthly payment to Shelter of $164 and shows Shelter's total claim as $9818.00. There are two reasons why the Court cannot approve this structuring of payment. First, Ford's plan does not break the monthly payment to Shelter down into the current monthly payment and the arrearage payment. This is absolutely necessary for a § 1322(b)(5) classification. Ford should amend his plan to show the monthly payments to Shelter in a manner similar to his monthly payments to Juvenile Court.

The second reason the Court cannot confirm the payment structure of Ford's plan is that, as a special class unsecured creditor, Shelter is not being paid the entire $9818.00 through the Chapter 13 plan. The plan is only going to pay Shelter the $50.00 monthly payment due under the original terms of the promissory note, which totals $3,000.00 over the life of the plan, and any arrearage Ford incurred pre-petition. The Court was not presented with any evidence regarding the amount of the arrearage; however, assuming that Ford never made a payment under the note prior to filing for Chapter 13 relief, the maximum amount of the arrearage would be $700.00.[3] These two figures total $3700.00, not $9818.00. Because a debtor electing to classify a debt under § 1322(b)(5) is not entitled to accelerate the payments due under the contract, the payments Ford makes to Shelter under his Chapter 13 plan may only total $3700.00. Any payments above and beyond the $50.00 monthly installment due under the contract must be applied towards the arrearage.

As Ford's plan is currently structured, $114.00/month is being applied to the arrearage. The Court was not presented with any evidence regarding the arrearage on the Shelter note which makes any determination as to whether or not this is a reasonable cure period nearly impossible. Assuming, arguendo, that the arrearage is in fact $700, this $114 monthly payment to Shelter would cure the arrearage within six months. Based on the evidence which is now before the Court, the Court finds this cure payment and period to be reasonable within the confines of § 1322(b)(5).

## C. Unfair Discrimination under 11 U.S.C. § 1322(b)(1)

In addition to appropriately structuring the plan payments on a § 1322(b)(5) debt, a plan which makes such classification of an unsecured debt must satisfy the requirements of § 1322(b)(1). *Chandler,* 210 B.R. at 903–904. Section 1322(b)(1)

---

**3.** The Court is assuming that because the promissory note with Shelter was executed on April 15, 1997, and the down payment of $150 .00 was due on April 8, 1997, the down payment was made prior to executing the note. Any arrearage that might have accumulated, therefore, would result from the debtor's failure to make the $50.00 monthly payments.

prohibits a Chapter 13 plan from discriminating unfairly against any class of unsecured claims. 11 U.S.C. § 1322(b)(1). In analyzing a plan under § 1322(b)(1), several courts have explained the section's prohibition as follows:

> The "unfair discrimination" test in section 1322(b)(1) is to protect creditors, and the only discrimination that can be condoned under this statutory section is discrimination that substantially benefits creditors even though some incidental benefit may accrue to the debtor.

*Chandler,* 210 B.R. at 903; *See also In re Gonzalez,* 206 B.R. 239, 240 (Bankr.S.D.Fla. 1997); *McCullough v. Brown,* 162 B.R. 506, 510–11 (N.D.Ill.1993). Like the "reasonable time" inquiry under § 1322(b)(5), the "unfair discrimination" determination is a fact-specific one which must be made on a case-by-case basis. *Delauder,* 189 B.R. at 644; *In re Kolbe,* 199 B.R. 569, 575 (Bankr.D.Md.1996).

In the case at bar, the debtor has classified the promissory note with Shelter as a long term debt under § 1322(b)(5). Once Ford makes the amendments set forth in the previous section, the total amount of Shelter's claim under Ford's plan will be $3700.[4] The practical result of this classification is to reduce the total amount of Shelter's claim under the plan by over $6100.00. This reduction, in turn, reduces Ford's total unsecured debt from $15,000 to $6,000. With plan payments of approximately $900/month, the debtor should have no problem paying 100% to his unsecured creditors. If Ford did not classify the Shelter debt pursuant to § 1322(b)(5), the optimum unsecured percentage would be around 75%. It is difficult for the Court to see how a 25% increase in payments to unsecured creditors results in any discrimination against the creditors at all.

In accordance with the above reasoning, the Court finds that Ford is entitled to classify the promissory note to Shelter as a long term debt pursuant to § 1322(b)(5). The Court also finds that such classification does not "unfairly discriminate" against Ford's other unsecured creditors and thus does not violate § 1322(b)(1). As a result, the Court will overrule the Trustee's Objection to Confirmation. The Court is denying confirmation of Ford's Chapter 13 plan, however, until such time as the amendments set forth in this memorandum opinion are made to the plan.

## III. ORDER

It is **THEREFORE ORDERED** that the Chapter 13 Trustee's Objection to Confirmation is **OVERRULED.**

It is FURTHER **ORDERED** that the debtor, Anthony Ladill Ford, shall amend his Chapter 13 plan to designate Shelter Insurance as a Special Class Unsecured Creditor and to set forth the monthly payments to Shelter as follows:

1. The ongoing monthly payment of $50.00;

2. The ongoing payment beginning date;

3. The total amount of the approximate arrearage;

4. The interest rate on the arrearage; and,

5. The monthly payment on the arrearage of $114.00.

The debtor shall have thirty days to amend his Chapter 13 plan.

It is FURTHER **ORDERED** that confirmation of the debtor's Chapter 13 plan shall be DENIED until such time as the necessary amendments are made.

**IT IS SO ORDERED.**

---

4. Assuming that the arrearage totals $700.00. Should the arrearage be smaller, the total amount to be paid to Shelter will be smaller.