**In re Scott Allen BENNER and Marcy Ann Benner, Debtors.**

**Bankruptcy No. 4–93–1651.**

United States Bankruptcy Court,
D. Minnesota.

July 28, 1993.

Gregory J. Wald, St. Paul, MN, for debtor.

Stephen Creasey, Minneapolis, MN, for trustee.

## MEMORANDUM ORDER CONFIRMING CHAPTER 13 PLAN

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 6th day of May, 1993, on confirmation of the debtors' chapter 13 plan. Appearances were as follows: Gregory Wald for the debtors, and Stephen Creasey for the chapter 13 trustee.

### STATEMENT OF FACTS

The debtors filed this chapter 13 petition on March 22, 1993. The debtors propose to pay $210 per month into their plan for 60 months, resulting in total plan receipts of $12,600. The debtors' plan estimates that the trustee will make payments on secured claims and priority unsecured claims totalling $10,439, and nonpriority unsecured claims totalling $23,000. The plan estimates that nonpriority unsecured claimants will receive 5% of their total claims, or approximately $1,150.

The debtors propose to pay the outstanding balance of a student loan debt to the Higher Education Assistance Foundation ("HEAF") outside the plan, while curing the arrearages on such loan within the plan. The HEAF claim is a nonpriority unsecured claim in the amount of $8,296. The debtors' amended schedule of expenses lists the monthly payment to HEAF at $80, resulting in a total of $4,800 paid on the HEAF claim during the term of the plan. HEAF would therefore receive an amount equal to 57% of its claim during the plan period. Although neither the trustee nor the debtors have introduced the promissory note or any other loan documents into the record, the trustee appears to concede that the term of the HEAF obligation extends beyond the date final payment will be made under the chapter 13 plan.

If the HEAF claim were included in the nonpriority unsecured class, the total amount of nonpriority unsecured claims to be paid under the plan would rise to $31,296 ($23,000 + $8,296). The total amount distributed to such class under the plan would rise to $5,950 ($1,150 + $4,800). Thus, the nonpriority unsecured class would be paid 19% of the amount of its claims.

The chapter 13 trustee objects to the debtors' plan asserting that by excluding HEAF from the nonpriority unsecured class the designation of the class unfairly discriminates against such class in violation of 11 U.S.C. § 1322(b)(1). The debtors respond that while the designation discriminates against such class, such discrimination is not unfair because it is expressly authorized by 11 U.S.C. § 1322(b)(5).

## DISCUSSION

Section 1322(b)(1) of the Bankruptcy Code provides that a chapter 13 plan may:

designate a class or classes of unsecured claims, ... but may not discriminate unfairly against any class so designated.

11 U.S.C. § 1322(b)(1). Section 1322(b)(5) provides that a plan may:

provide for the curing of any default within a reasonable time and maintenance of payments while· the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5). Typically, section 1322(b)(5) is used by chapter 13 debtors to maintain mortgage payments or other long-term secured debt while curing the arrearages under the plan. *See, e.g., In re Bradley*, 109 B.R. 182, 183 (Bankr.E.D.Va.1990). However, by its express terms section 1322(b)(5) also applies to long-term unsecured debt. Such debt is rare in chapter 13 cases, except for student loan obligations and obligations arising from marital dissolutions.

The trustee asserts that the designation of the nonpriority unsecured class unfairly discriminates against such class by excluding the HEAF claim and paying the class members less than they would receive if the HEAF claim were included in the class and paid its pro rata share. The debtors argue that their exclusion of the HEAF claim from the nonpriority unsecured class does not unfairly discriminate against such class, because such treatment is expressly authorized by section 1322(b)(5).

The issue raised by the trustee's objection in this case has been addressed by several courts, each of which holds that section 1322(b)(5) allows a debtor .to treat long-term student loan debt in the manner the debtors propose to treat .the HEAF debt in the present case. In *In re Dodds*, 140 B.R. 542 (Bankr.D.Mont.1992), the debtors proposed to pay their student loan creditor in full outside the plan according to the terms of the loan, while paying the remaining nonpriority unsecured creditors 79% of their claims through the plan. The court concluded that the plan was not unfairly discriminatory because the treatment of the student loan debt satisfied the requirements of section 1322(b)(5).

In *In re Saulter*, 133 B.R. 148 (Bankr. W.D.Mo.1991), the debtor classified her student loan in a class separate from the remaining nonpriority unsecured creditors. The plan proposed to pay the student loan creditors 100% of their claims, while the remaining nonpriority unsecured creditors would only receive 10%. The plan was originally confirmed, but upon reconsideration the court withdrew its confirmation of the debtors plan, finding it to be unfairly discriminatory in violation of section 1322(b)(5). However, the court stated in *dicta* that since the final payments on the student loan obligations fell due after completion of the plan period, the student loan debt could be treated as long-term debt under section 1322(b)(5) without running afoul of section 1322(b)(1). *Saulter*, 133 B.R. at 150.

Similarly, in *In re Christophe*, 151 B.R. 475 (Bankr.N.D.Ill.1993), the debtor separately classified her student loan debt and proposed to pay 100% of such debt while the remaining nonpriority unsecured creditors received only 32% of their claims. Given the limited record before it, the court found the plan to be, unfairly discriminatory in favor of the student loan creditor because the debtor's legitimate interest in paying the nondischargeable obligation did not justify the degree of discrimination. The court stated in *dicta* that a debtor's interest in remaining current on nondischargeable student loan obligations *is* a reasonable basis for discrimination, and if the final payment on a student loan is due

after completion of the chapter 13 plan, then such a student loan could be treated according to section 1322(b)(5) without violating section 1322(b)(1). *Christophe*, 151 B.R. at 480.

 By its express terms, section 1322(b)(5) applies to both secured *and unsecured* debt. Long-term student loan obligations with payment terms that extend beyond completion of the plan fall squarely within the ambit of section 1322(b)(5). Since student loan debt and marital dissolution obligations are the only significant type of long-term debt carried by chapter 13 debtors, section 1322(b)(5) would be rendered largely ineffective with respect to unsecured debt if student loans could not be treated thereunder solely because the creditor would receive better treatment than other nonpriority unsecured creditors. I conclude therefore, that student loan debt which is properly treated outside the plan in accordance with section 1322(b)(5), does not result in unfair discrimination in violation of section 1322(b)(1).

 This result is in accord with the Eighth Circuit Court of Appeals' test for unfairly discriminatory class designations set forth in *Mickelson v. Leser (In re Leser)*, 939 F.2d 669 (8th Cir.1991). Under *Leser*, a court must determine:

> (1) whether the discrimination has a reasonable basis;
>
> (2) whether the debtor can carry out a plan without the discrimination;
>
> (3) whether the discrimination is proposed in good faith; and
>
> (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*Leser*, 939 F.2d at 672. Although the four-part test enunciated in *Leser* has been criticized, it is the law in this Circuit and I am bound thereby. *See In re Brown*, 152 B.R. 232, 235–37 (Bankr.N.D.Ill.1993) (citing several other cases that criticize the four-part test).

 Excluding HEAF from the nonpriority unsecured class and paying it outside the plan according to the terms of the promissory note meets the four-part *Leser* test in this case. *First*, the basis for the discriminatory treatment is that the HEAF claim is nondischargeable, and the debtor wishes to emerge from chapter 13 without being burdened by such debt. If the HEAF claim were included in the nonpriority unsecured class, the debtors would only satisfy 19% of the nondischargeable HEAF claim during the plan period and would emerge from chapter 13 still owing 81% of such claim, or approximately $6,720. The debtors' fresh start will therefore be impaired if the HEAF claim is classified with the other nonpriority unsecured creditors. A debtor's interest in receiving a fresh start and emerging from chapter 13 unencumbered by substantial nondischargeable debt can be a reasonable basis for discriminatory classification. *In re Whittaker*, 113 B.R. 531, 534 (Bankr.D.Minn.1990); *see also Leser*, 939 F.2d at 672 (citing *In re Davidson*, 72 B.R. 384, 387 (Bankr.D.Colo. 1987)); *Christophe*, 151 B.R. at 478–79.

*Second*, these debtors could not obtain a fresh start through a chapter 13 plan absent treatment of the HEAF debt outside the plan. The debtors could not separately classify the HEAF claim and provide it with special treatment since such treatment would clearly violate section 1322(b)(1). *See In re Scheiber*, 129 B.R. 604, 606–07 (Bankr.D.Minn.1991). The debtors may actually be able to carry out a chapter 13 plan by classifying the HEAF claim along with the remaining nonpriority unsecured claims, but if they did so they would emerge from chapter 13 owing substantial arrearages to HEAF since the HEAF claim is nondischargeable. The debtors would essentially emerge from chapter 13 only to have a judgment entered against them for failure to remain current to HEAF. While such a plan is possible, it makes no sense to hold that the four-part test of *Leser* is not met solely because the debtors can carry out a plan that would essentially deny them their fresh start.

*Third*, the discrimination is proposed in good faith. By making student loan obligations nondischargeable, Congress has made it clear that such debt should be paid in full. The debtors are simply seeking to use their best efforts to repay HEAF and

their other creditors and still emerge from Chapter 13 without substantial debt burden.

*Fourth,* the degree of discrimination is directly related to the debtor's legitimate interest in a fresh start. Although the debtors' plan deprives the nonpriority unsecured class an additional 14% of its total claims, the debtors would be saddled with approximately $6,720 of nondischargeable debt if they classified HEAF with the other nonpriority unsecured creditors. Such an extreme impairment of the debtors' fresh start justifies depriving the nonpriority unsecured creditors of the additional 14% distribution they would receive without the discriminatory classification.

My decision today is consistent with Judge Kressel's decision in *In re Scheiber,* 129 B.R. 604 (Bankr.D.Minn.1991). In *Scheiber,* the plan placed a student loan creditor in a class separate from the remaining nonpriority unsecured creditors, and proposed to pay the student loan debt in full during the term of the plan while the nonpriority unsecured class would receive only 3.5% of its claims. The debtors argued that absent such classification they would be deprived of their fresh start because they would be saddled with the remaining nondischargeable student loan debt after completion of their plan. Notwithstanding such argument, Judge Kressel found the plan to be unfairly discriminatory, concluding that the best interests of the debtor should not be determinative in deciding whether a discriminatory plan is unfair. *Scheiber,* 129 B.R. at 606.

The present case differs from *Scheiber* because the debtors have provided for payment of the student loan obligation outside the plan, rather than separately classifying the debt within the plan. While the debtors herein arguably obtain the same benefit that Judge Kressel denied the debtors in *Scheiber,* the debtors' means of doing so in the present case is expressly sanctioned by the Bankruptcy Code. Clearly the debtors' best interests should not be determinative of whether a classification is unfair. However, where the Bankruptcy Code gives the debtors the option of treating long-term debt in a certain manner if such treatment is in the debtors' best interests, their election to do so can hardly be considered unfair.

## CONCLUSIONS

The debtors' exclusion of the HEAF claim from the nonpriority unsecured class is not unfairly discriminatory against the members of such class because section 1322(b)(5) expressly provides for such treatment. Furthermore, the debtors' treatment of the HEAF claim is fair under the four-part test prescribed by the Eighth Circuit Court of Appeals in *Leser.*

ACCORDINGLY, IT IS HEREBY ORDERED: The chapter 13 trustee's objection to confirmation of the debtors' chapter 13 plan is OVERRULED, and such plan is CONFIRMED.