In re Torian Marcel **WILLIAMS**, Annette Haywood Burton, Katressa L. Haten, Jeffrey L. King, Lora J. King, Percy Hunter, Barbara M. Hunter, Debtors.

Nos. 99–35958–L, 00–21741–L, 00–20777–L, 00–21785–L, 00–20972–L.

United States Bankruptcy Court, W.D. Tennessee, Eastern Division.

July 27, 2000.

Brad George, Memphis, TN, for Torian Marcel Williams.

Joseph D. Fox, Memphis, TN, for Katressa L. Haten, Jeffrey L. King, and Lora J. King.

Allen C. Jones, Memphis, TN, for Percy Hunter and Barbara M. Hunter.

Ben G. Sissman, Memphis, TN, for Annette Haywood Burton.

George W. Stevenson, Memphis, TN, Chapter 13 Trustee.

## MEMORANDUM OPINION

JENNIE D. LATTA, Bankruptcy Judge.

■ The court scheduled status conferences in each of the referenced Chapter 13 cases which propose to separately classify and preferentially treat student loan claims. No objections to the proposed classifications were raised by any creditor or the standing Chapter 13 trustee. Nevertheless, the bankruptcy judge has an independent obligation to determine whether a plan fulfills the requirements for confirmation under Chapter 13. *See, e.g., McCullough v. Brown (In re Brown),* 162 B.R. 506, 508 n. 3 (N.D.Ill.1993) (citing *In re Christophe,* 151 B.R. 475, 476 (Bankr.N.D.Ill.1993)).

The issue before the court is whether a plan that proposes to separately classify and fully repay nondischargeable student loan debt unfairly discriminates against other unsecured creditors who will receive only partial repayment of their dischargeable claims. For the reasons set forth below, the court determines that the proposed plans are not capable of confirmation because they discriminate unfairly against general unsecured creditors. These are core proceedings. 28 U.S.C. § 157(b)(2)(L).

## I. BACKGROUND FACTS

In each of these cases, the debtor proposes to pay 100% of his or her student loan claim over the life of the plan. Each of the plans is expected to terminate after 60 months. Two of the plans specify no distribution to the other unsecured creditors, but leave that percentage to be determined by the Chapter 13 trustee after the bar date for filing proofs of claim has passed. The other three plans propose

paying a specified percentage to the general unsecured creditors: the Kings propose to pay 15%, Mr. Williams to pay 20%, and the Hunters to pay 25%.

At the hearing, counsel for Mr. Williams informed the court that while the debtor listed Tennessee Student Assistance Corporation ("TSAC") in its schedules, TSAC was not included in the matrix and, therefore, did not receive notice of the bankruptcy filing. The debtor filed an amended plan which listed TSAC as a general unsecured creditor to receive a pro rata distribution of 20% along with the other general unsecured creditors. As a result, Mr. Williams' plan is not ready for confirmation and will not be considered by the court at this time.

As to the remaining four cases, the student loan lenders have filed proofs of claim in all but Ms. Burton's case. United Student Aid Funds, Inc. ("USAF") filed a proof of claim in the amount of $2,151.67 in the Kings' case. This claim consists of unpaid principal in the amount of $1,075.56, unpaid accrued interest in the amount of $64.12, and collection costs in the amount of $1,012.23. TSAC filed a proof of claim in the amount of $1,586.10 in Ms. Haten's case. This claim apparently includes two loans which consist of unpaid principal in the amount of $1,338.49 and $179.57 ($1,518.06) and unpaid accrued interest in the amount of $59.94 and $8.10 ($68.04). The United States Department of Education filed a proof of claim in the Hunters' case in the amount of $9,595.58. The only document supporting this proof of claim is the original contract signed by Mrs. Hunter for a loan in the amount of $7,472.00.

## II. ANALYSIS

■ Section 1322(b)(1) provides in pertinent part that a debtor's plan may "designate a class or classes of unsecured claims, as provided in section 1122 of [title 11], but may not discriminate unfairly against any class so designated." Section 1122 requires that a claim or interest be placed in a particular class only if the claim or interest is substantially similar to other claims or interests of that class, but permits dissimilar claims to be classified together for administrative convenience. See 11 U.S.C. § 1122(a) and (b). Implicit in section 1122 is the requirement that claims be sufficiently dissimilar to warrant separate classification. See Teamsters Nat'l Freight Industry Negotiating Committee v. U.S. Truck (In re U.S. Truck), 800 F.2d 581, 586 (6th Cir.1986) ("[T]here must be some limit on a debtor's power to classify creditors...."). In Chapter 11 cases where confirmation of the plan requires the acceptance of the plan by at least one class of impaired claims, a reasonable limitation upon a debtor's ability to separately classify claims prevents inappropriate "gerrymandering" to obtain an accepting class. Chapter 13 does not provide for acceptance of the plan by the vote of creditors, thus the only purpose served by a separate designation of unsecured claims in Chapter 13 is discrimination in treatment. Discrimination between classes of unsecured claims generally takes the form of a difference in the percentage of payment or the order of distribution. Discrimination is said to be unfair when there is no valid reason to prefer one group of unsecured claims over another. See, e.g., Groves v. LaBarge (In re Groves), 39 F.3d 212, 215 (8th Cir.1994); McDonald v. Sperna (In re Sperna), 173 B.R. 654, 658 (9th Cir. BAP 1994); In re Coonce, 213 B.R. 344, 346 (Bankr.S.D.Ill. 1997). If there is no valid reason for discrimination, there is also no valid reason for separate classification in Chapter 13. See 8 COLLIER ON BANKRUPTCY ¶ 1322.05, pp. 1322–13 through –15 (15th rev. ed.2000).

■ George Stevenson, the standing Chapter 13 trustee, filed a memorandum in favor of confirmation of the debtors' plans in these cases. Mr. Stevenson argues that section 1322(b)(1) requires that a specially designated class of unsecured creditors not be treated worse than general unsecured

creditors, but does not prohibit better treatment of the designated class. Mr. Stevenson is correct in one sense—section 1322(b)(1) does not prohibit better treatment of a designated class. Mr. Stevenson is incorrect in another sense because designation of one class necessarily involves designation of a second class. As was shown, in Chapter 13 the only purpose for such designation is discrimination in treatment. After secured claims and administrative expenses are provided for, the balance of payments under a Chapter 13 plan are divided among the unsecured claims. To discriminate in favor of one class of unsecured claims necessarily results in discrimination against another class of unsecured claims. What is required is that the discrimination not be unfair.

 In these cases, the debtors propose to separately classify their student loan claims from other unsecured claims, and to pay their student loan claims "100%." Ms. Haten, Mr. and Mrs. King, and Mr. and Mrs. Hunter propose to pay interest on the student loan claims as well. The debtors, as proponents of the plans, bear the burden of proving that the proposed classification does not discriminate unfairly. *In re Brigance*, 219 B.R. 486, 494 (Bankr.W.D.Tenn.1998)(citing *Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 214 (8th Cir.1994); *In re Kolbe*, 199 B.R. 569, 570–71 (Bankr.D.Md.1996)). This court has previously quoted with approval the comments of Bankruptcy Judge Barbara Sellers concerning separate classification of claims in Chapter 13 cases:

> Any classification of unsecured claims must pass a test of fairness unless that classification involves consumer debts for which co-signers were obtained. *See*

*Nelson v. Easley (In re Easley)*, 72 B.R. 948, 956 (Bankr.M.D.Tenn.1987). Unlike Chapter 11, unsecured creditors in Chapter 13 are not afforded an opportunity to vote. Further, unless their claims are unusually large, such creditors generally lack economic incentive to object to confirmation of a low dividend plan. Therefore, the primary burden for scrutinizing the differing treatment of separately classified unsecured claims in Chapter 13 falls, first on the Chapter 13 trustee, and then on the court.

*In re Riggel*, 142 B.R. 199, 202 (Bankr. S.D.Ohio 1992) (quoted in *In re Brigance*, 219 B.R. at 494).

 Four factors must be considered in determining whether a proposed classification scheme is proper:

1. Whether the discrimination has a reasonable basis;
2. Whether the debtor can carry out the plan without such discrimination;
3. Whether the classification has been proposed in good faith; and
4. The nature of the treatment of the class discriminated against.[1]

*In re Brigance*, 219 B.R. at 494 (quoting *In re Riggel*, 142 B.R. at 202, and citing 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 4.61, p. 4–132 (2d ed.1994) and cases cited at n. 471).

The debtors have put forth a number of justifications for the separate classification of their student loan debts. The primary reason offered for the separate classification is that the student loan claims, unlike the general unsecured claims, are not dischargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(8).[2] Related to this is the argu-

---

1. This is the test most commonly used by courts to determine whether proposed discrimination is unfair. It is most often referred to as the *Leser* test. *See In re Leser*, 939 F.2d 669, 672 (8th Cir.1991).

2. Section 523(a)(8) provides:
 > (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
 > (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit,

ment that the debtors will not receive the benefit of a fresh start if they are not allowed to fully repay their student loans during the pendency of their plans. The debtors argue that the remedies available to student loan creditors, such as wage garnishment and set off of income tax refunds distinguishes these claims from other general unsecured claims. The trustee argues that the fact that Congress has rendered student loans nondischargeable except in cases of undue hardship demonstrates a strong public policy in favor of full repayment of student loans. Another distinction between student loans and other unsecured loans is the length of the period for repayment of most student loans. Pursuant to section 1322(b)(5), if the last payment on the student loan is due after the final payment under the plan is due, the plan may provide for the curing of any default and the maintenance of ongoing payments. This treatment can only be accomplished through separate classification of the student loan claim.

 The court agrees that there are a number of reasonable bases for separately classifying student loan claims from other general unsecured claims. The more important and difficult question is what degree of discrimination in the treatment of student loan claims is necessary and appropriate. The determination of unfair discrimination lies within the discretion of

the bankruptcy judge and is to be made on a case by case basis. *See In re Groves*, 39 F.3d at 214 (the "application of the 'discriminate unfairly' standard ... may involve little more than exercise of the bankruptcy court's broad discretion"); *In re Dodds*, 140 B.R. 542, 544 (Bankr.D.Mont. 1992); *In re Freshley*, 69 B.R. 96, 97 (Bankr.N.D.Ga.1987).

## A. Interest Payments

 The first type of discrimination proposed by three of the debtors is the payment of interest on their student loan claims, but not on other unsecured claims. Creditors are not entitled to include unmatured (or "post-petition") interest as part of their claims in bankruptcy proceedings. *See* 11 U.S.C. § 502(b)(2); *Leeper v. Pennsylvania Higher Education Assistance Agency*, 49 F.3d 98, 100–01 (3rd Cir.1995). In order to be confirmed, a Chapter 13 plan must provide for the payment of interest on secured claims, but is not required to provide for the payment of interest on priority claims (including administrative claims) or general unsecured claims. *See In re Eaton*, 130 B.R. 74, 77–78 (Bankr.S.D.Iowa 1991) (section 1325(b)(1)(A) does not require that a Chapter 13 plan provide for the payment of the present value of unsecured claims); 11 U.S.C. §§ 1322(a)(2),[3] 1325(a)(5) and (b)(1);[4] *see also* LUNDIN §§ 4.14 and 5.34;

scholarship or stipend *unless* excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.
11 U.S.C. § 523(a)(8).

**3.** Section 1322(a)(2) provides:
(a) The plan shall—
(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim.
11 U.S.C. § 1322(a)(2).

**4.** Section 1325 provides in pertinent part:
(a) Except as provided in subsection (b), the court shall confirm a plan if—

* * *
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.
* * *
(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

*but see In re Rhein,* 73 B.R. 285 (Bankr. E.D.Mich.1987) (Section 1325(b)(1)(A) does require that a Chapter 13 plan provide for the payment of the present value of unsecured claims if debtor will pay less than all of disposable income over three-year plan.) The student loan creditor cannot compel the payment of post-petition interest on its claim from the bankruptcy estate, but may compel the payment of interest from the debtor after completion of the Chapter 13 plan because interest on nondischargeable debts is nondischargeable. *See Leeper,* 49 F.3d at 101–03 (3d Cir.1995) (citing *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964)).

█ The debtors in these cases argue that their interest in a fresh start justifies the payment of interest on their student loan claims, but not on other unsecured claims. The debtors want to emerge from their Chapter 13 cases with a full discharge of all their debts, including their student loan debts.[5] The court does not believe that the debtors' interest in a fresh start should override the requirement of fairness in distribution.[6] After completion of their Chapter 13 plans, these debtors should be left with very little ongoing debt,

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
> 11 U.S.C. § 1325(a)(5) and (b)(1).

5. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) ("Th[e] purpose of the [Bankruptcy Act] has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."); *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d

and should be able to structure an appropriate agreement for the repayment of interest accrued on their student loans during the pendency of their Chapter 13 plans.

█ In the alternative, the Bankruptcy Code itself provides one approved method of preferring student loan claims over other unsecured claims. Section 1322(b)(5) [7] provides for the curing of any default within a reasonable time and maintenance of payments on unsecured claims on which the last payment is due after the final payment under the plan is due. Many student loan claims will have remaining terms that extend beyond a three- to five-year plan. The maintenance of ongoing payments necessarily involves the payment of post-petition interest. Pre-petition interest will be included in the creditor's proof of claim consisting of the arrearage to be paid (cured) within a reasonable time. Through this method, a debtor should be able to fully repay student loan arrearages during the plan, and reestablish the original loan repayment schedule. This type of discrimination is specifically contemplated and sanctioned by the Bankruptcy Code. *See In re Sullivan,* 195 B.R.

433, 438 (6th Cir.1998) (citing *Local Loan Co. v. Hunt*).

6. A debtor cannot expect an unfettered fresh start when one of the debtor's debts is nondischargeable. *See In re Sullivan,* 195 B.R. 649, 654 (Bankr.W.D.Tex.1996); *see also McDonald v. Sperna (In re Sperna),* 173 B.R. 654, 659 (9th Cir. BAP 1994) (noting that debtors often emerge from chapter 13 with continuing obligations on long term debt like mortgages).

7. Section 1322(b)(5) provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.
> 11 U.S.C. § 1322(b)(5).

649, 658 (Bankr.W.D.Tex.1996); *In re Cox,* 186 B.R. 744, 747 (Bankr.N.D.Fla.1995); *In re Benner,* 156 B.R. 631, 635 (Bankr. D.Minn.1993). Because the Bankruptcy Code contemplates the curing of any default within a reasonable time, a debtor may pay 100% of a student loan arrearage while paying less than 100% of other unsecured claims, so long as the degree of discrimination is necessary to the debtor's success under the plan. *See In re Chandler,* 210 B.R. 898, 904 (Bankr.D.N.H. 1997); *In re Eiland,* 170 B.R. 370, 379–80 (Bankr.N.D.Ill.1994); *In re Benner,* 156 B.R. at 634 (all concluding that curing the default in full is not unfair discrimination); *but see In re Thibodeau,* 248 B.R. 699, 703–04 (Bankr.D.Mass.2000); *In re Coonce,* 213 B.R. at 348; *In re Sullivan,* 195 B.R. at 657–58.

## B. Acceleration of Student Loans

### 1. The Hunters

 The Hunters' proposed plan contemplates full repayment of their student loan even though under its original terms the loan would not be repaid until at least 2007. The Hunters borrowed funds under the PLUS program [8] to enable their son to attend Alabama State University. The son did not complete his studies and has not been able or has not offered to assist his parents in repaying the loan. The Hunters propose to pay 100% of their

PLUS loan during their five year plan, but only 25% of their other unsecured debt. In effect, the Hunters propose that their unsecured creditors subsidize their son's educational efforts. The Hunters do not wish to file a Chapter 7 case because they have equity in their home. Mr. Hunter receives military disability income of $1,476 per month. Mrs. Hunter plans to retire from teaching school and expects to receive a retirement income of $1,695 per month. The ongoing payments on the PLUS loan would be $121.30 per month. Mr. Hunter testified that Mrs. Hunter is retiring upon the advice of her doctor,[9] but the Hunters have not sought a hardship discharge [10] with respect to their PLUS loan nor apparently have they sought disability relief from their lender. Absent the establishment of a hardship under section 523(a)(8), the court does not find it reasonable that the debtors expect to receive a fresh start after five years through this Chapter 13 plan, when they originally agreed to and expected a ten-year repayment term for their PLUS loan.

It is significant that the Hunters' loan was made under the PLUS program, that is, that the loan was made to them and not to their son. Although Mr. Hunter seemed disappointed that his son had not assisted in repaying the loan, the court notes that the loan was actually extended to Mr. and Mrs. Hunter with the expectation that they would repay it. The re-

---

**8.** The Federal PLUS (Parent Loan for Undergraduate Students) program provides a low-cost financing option to help families fund the college education of a dependent student. The program allows parents to borrow up to the total cost to attend school less other financial aid received. *See* 20 U.S.C. § 1078–2.

**9.** Mr. Hunter testified that Mrs. Hunter planned to retire at the end of June from the Memphis City Schools because she suffers from arthritis. Her income will drop from $3,420 per month to $1,695 per month. After Mrs. Hunter's retirement, the couple's combined monthly income will be $3,171. The Hunters list monthly expenses of $3,277, and propose to pay $300 semi-monthly into their plan. On its face, the Hunter's plan is not feasible.

**10.** Section 523(a)(8) provides that a student loan may be discharged if the debtor can prove that repayment of the loan would cause an undue hardship on the debtor or his dependents. In *In re Hornsby,* 144 F.3d 433 (6th Cir.1998), the Court of Appeals for the Sixth Circuit concluded that the bankruptcy court has the authority to discharge a portion of the student loan if total discharge is not appropriate. *Id.* at 438–39. *See also United Student Aid Funds, Inc. v. Taylor (In re Taylor),* 223 B.R. 747, 751 (9th Cir. BAP 1998) (Issue of Chapter 13 debtors' student loan debt on basis of undue hardship may be adjudicated at any time, including before completion of debtors' plan payments.).

quirement that the Hunters repay this loan would not have been altered had their son received a degree. The Hunters borrowed funds to enable their son to attend college with the requirement that they repay the loan over a ten-year period.

▇▇ The Hunters are represented by Mr. Allen Jones. The Hunters argue that leaving a student loan unpaid after the completion of a Chapter 13 case is an "unnecessary impairment of the Debtors' right to a 'fresh start' after bankruptcy," citing *In re Whittaker*, 113 B.R. 531 (Bankr.D.Minn.1990); *In re Boggan*, 125 B.R. 533 (Bankr.N.D.Ill.1991); and *In re Tucker*, 159 B.R. 325 (Bankr.D.Mont. 1993). The court in *In re Whittaker* permitted the payment of a child support arrearage in full before the payment of general unsecured claims. 113 B.R. at 533–34. *Boggan* and *Tucker* provide that the nondischargeability of student loan claims provides a reasonable basis for a debtor to prefer student loan claims through his Chapter 13 plan so long as the general unsecured creditors receive at least what they would have received in Chapter 7. *In re Tucker*, 159 B.R. at 329; *In re Boggan*, 125 B.R. at 534. This court agrees with the conclusion of *Whittaker*, and would permit the Hunters to cure the arrearage on their PLUS loan in full through their plan, even if that would result in a greater percentage being paid on the student loan arrearage than that being paid to general unsecured creditors. What the Hunters propose however, is more akin to prepayment of an ongoing child support obligation rather than the curing of an arrearage. The *Whittaker* opinion does not support such treatment. The court has reviewed the *Boggan* and *Tucker* opinions. Unfortunately, neither of them provides information concerning the remaining term of the student loans at issue. Thus the court cannot determine whether payment in full of the student loans in those cases resulted in an acceleration of the repayment of those loans such

as is proposed by the Hunters. This court does not believe that acceleration of the Hunters' PLUS loan is necessary to the success of their plan, or that such treatment is fair to the general unsecured creditors. *See McCullough*, 162 B.R. at 516 (by introducing an inequality of payment into their Chapter 13 plans, Debtors would eliminate that future obligation [of student loan debt] at the expense of their underpaid other creditors); *In re Sperna*, 173 B.R. at 660 (acceleration of student loan payments at expense of the unsecured creditors would be in bad faith); *In re Coonce*, 213 B.R. at 349 (debtor's interest in fresh start does not justify preferentially repaying student loan obligations to the prejudice of other unsecured creditors); *In re Chandler*, 210 B.R. at 904 (debtors may not accelerate payments); *In re Bernal*, 189 B.R. at 510 (it does not further the purposes of chapter 13 to promote the satisfaction of nondischargeable debts by discriminating against other general unsecured creditors); *In re Goewey*, 185 B.R. 444, 447 (Bankr.N.D.N.Y.1995) (allowing debtor to pay 100% to student loan creditor while paying other unsecured creditors 10% forces the other unsecured creditors to finance debtor's education); *In re Anderson*, 173 B.R. 226, 230–31 (Bankr. D.Colo.1993) (allowing debtor to repay 100% of student loan during the term of the plan would unacceptably accelerate payment of the student loan debt to the detriment of other creditors); *In re Eiland*, 170 B.R. at 375 (quoting *In re Christophe*, 151 B.R. 475, 480 (Bankr.N.D.Ill. 1993)).

### 2. Annette Haywood Burton

Ms. Burton attended Southeast School of Technology from April 1998 to October 1998. The court is unable to determine the original amount of her loan which was assigned to National Loan Servicing Center. No proof of claim has been filed by any lender with respect to this loan.[11] Ms.

---

**11.** In order to receive any distribution under the plan, a proof of claim must be filed on

Burton is represented by Mr. Ben Sissman. Mr. Sissman argued that debtors and their counsel face obstacles in determining exactly who currently holds these debtors' student loans and how much is owed in each instance. The court is not overly sympathetic to their plight. Clearly all of these debtors realized at the time they filed their petitions that they owed money on student loans. While the debtors may not know all of the information necessary to obtain all of the specifics of their loans, they surely can produce for their attorneys either the last mailing received regarding collection efforts on the loans or the name of the college or school they attended. Using the information found from these resources should prove helpful in determining the status of the debtors' loans. Additionally, regarding loans from programs administered by the Department of Education, debtors or their attorneys can contact the Federal Student Aid Information Center at 1–800–433–3243 or via the internet at www.ed.gov/offices/OPE/DCS to determine who holds their loans.

Ms. Burton proposes to pay 100% of this loan and a percentage to be determined after all proofs of claim are filed to other general unsecured creditors. Assuming a repayment period of ten years, it would appear that this loan, which was obtained in 1998, would qualify as a long term obligation for treatment under section 1322(b)(5). For the reasons stated earlier, the court does not believe that it is fair to permit the acceleration of student loans through a Chapter 13 plan at the expense of other unsecured creditors.

3. Ms. Haten and the Kings

Ms. Haten and Mr. and Mrs. King provided no information from which the court can ascertain the original terms of their loans. Thus the court cannot determine whether it would be appropriate for these debtors to cure their student loan arrearages through their plans while maintaining ongoing payments.

C. Greater Percentage

Assuming that the remaining debtors have student loans for which the last payment is due before the last payment under their proposed plans (i.e., that section 1325(b)(5) does not apply), the third type of discrimination proposed for student loans in these cases is the payment of 100% of these claims while other unsecured claims are paid a much lower percentage. Neither Ms. Haten nor the Kings have articulated a need for such discriminatory treatment other than their desire to emerge from their Chapter 13 plans debt free. In the clear majority of reported cases, the courts have concluded that the nondischargeability of a student loan by itself is not enough to permit debtors to pay student loans in full while the other general unsecured creditors receive less than 100% of their claims. See Groves v. LaBarge (In re Groves), 39 F.3d 212, 216 (8th Cir.1994); Eck v. Willis (In re Willis), 197 B.R. 912, 915 (N.D.Okla. 1996); McDonald v. Sperna (In re Sperna), 173 B.R. 654, 658 (9th Cir. BAP 1994); In re Coonce, 213 B.R. 344, 346 (Bankr. S.D.Ill.1997); In re Chandler, 210 B.R. 898, 902–03 (Bankr.D.N.H.1997); In re Tucker, 150 B.R. 203, 205 (Bankr.N.D.Ohio 1992); In re Saulter, 133 B.R. 148, 149 (Bankr.W.D.Mo.1991); In re Tucker, 130 B.R. 71, 73 (Bankr.S.D.Iowa 1991). But see In re Tucker, 159 B.R. 325, 329 (Bankr. D.Mont.1993); In re Benner, 156 B.R. 631, 634 (Bankr.D.Minn.1993); In re Keel, 143 B.R. 915, 916 (Bankr.D.Neb.1992). Clearly plans could be proposed by Ms. Haten and the Kings that would provide the same percentage repayment to all unsecured

---

behalf of the creditor. If the student loan lender fails to file a proof of claim and the debtor wishes to make payments on that claim, the debtor may file a proof of claim on behalf of the creditor pursuant to § 501(c), which provides:

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

11 U.S.C. § 501(c).

creditors, with the balance of the student loan claims surviving the completion of the Chapter 13 plans. Neither Ms. Haten nor the Kings introduced proof of any special circumstances that would prevent them from completing payment of their student loans after the conclusion of their Chapter 13 plans.

▉ Ms. Haten and Mr. and Mrs. King are represented by Joseph D. Fox, who filed a memorandum in support of confirmation of his clients' plans. Both Ms. Haten and the Kings, through their attorney, assert that in a Chapter 7 liquidation, there would be no assets available for distribution to unsecured creditors. These debtors have left open the percentage to be paid to general unsecured creditors pending the bar date for filing proofs of claim, but they assert that payment of any amount to these creditors will satisfy the best interest of creditors test. Mr. Fox asserts that so long as the Chapter13 plan proposes to pay more to general unsecured creditors than they would have received under Chapter 7, discrimination in favor of student loan creditors is fair. The court does not agree. As was eloquently pointed out by Senior District Judge Shadur in *McCullough:*

> Chapter 13 carries with it some perceived advantages and some perceived disadvantages in comparison with straight bankruptcy under Chapter 7. What a debtor may not do, consistently with the structure that Congress has created, is to pick and choose among the available options in a way that takes the advantages of one while avoiding the costs that Congress has attached to those advantages.

*McCullough,* 162 B.R. at 517. Chapter 13 is a strictly voluntary provision for the repayment of debts. The court must assume that the debtors in these cases chose Chapter 13 over Chapter 7 because of some perceived advantage to themselves. The debtors cannot, therefore, ignore the requirements for confirmation of a Chapter 13 plan, including the requirement that the plan not discriminate unfairly among classes of unsecured creditors.

▉ Both of the student loans in these cases are relatively small. TSAC filed a proof of claim in the amount of $1,586.10 in Ms. Haten's case. USAF filed a proof of claim in the amount of $2,151.67 in the Kings' case. On the one hand, this means that an amendment to the plan to provide for the same percentage to be paid to the student loan creditor as to other creditors would result in a rather small increase in the percentage to be paid to other unsecured creditors. On the other hand, the size of these claims also means that it would be relatively easy for the debtors to complete the repayment of their student loans after completion of their plans. Again the court cannot determine the remaining length of the original loan terms in these cases. If these are long term debts the court would permit the debtors to maintain ongoing payments and cure any arrearage over the life of the plan. If these loans are now short term obligations, the court will permit the debtors to discriminate in favor of the student loan creditors so long as the percentage to be paid on the student loan claims is no more than 30 percentage points in excess of the percentage to be paid to general unsecured claims. That is, if the debtor proposes to pay 100% of his student loan claim, he must propose to pay at least 70% of his general unsecured claims. Such discrimination will be considered fair by the court. The debtors bear the burden of showing unique circumstances to support a greater degree of discrimination.

### D. Preferential Payment

▉ A final type of discrimination proposed for student loans in these cases is the full repayment of the student loan claims before the payment of general unsecured claims. In an unrelated case, Mr. Stevenson, the standing Chapter 13 trustee, has testified that in this district those claims classified as "Class I, unsecured," are paid in full before general unsecured

creditors receive any distribution. *See In re Brigance*, 219 B.R. 486, 494 (Bankr. W.D.Tenn.1998), *aff'd sub nom. Cash in a Flash v. Brown*, 229 B.R. 739 (W.D.Tenn. 1999). The court is aware from personal experience that a substantial number of Chapter 13 cases fail within the first 18 months. Unlike claims for child and spousal support, student loan claims do not enjoy a statutory priority for distribution. It was in the 1990 amendments to the Bankruptcy Code that student loans were made nondischargeable in Chapter 13.[12] In 1994, child and spousal support obligations were given seventh priority in distribution.[13] Had Congress intended that student loans also enjoy priority of distribution, it could have specifically provided for it. *See In re Smalberger*, 157 B.R. 472, 476 (Bankr.D.Or.1993), *aff'd*, 170 B.R. 707 (D.Or.1994) ("The fact that Congress has not provided priority treatment for student loan debts either in § 507 or § 1322(b)(1) is some indication that Congress did not intend such debts to . . . be given preferential treatment.") The effect of classifying student loan claims as Class I unsecured is to give such claims priority of distribution. Even if a debtor were to propose 100% repayment to general unsecured creditors, if those creditors are not paid concurrently with student loans, they may in fact receive no distribution at all. There is nothing to prevent the debtors from making enough plan payments to pay their student loans in full and then voluntarily dismissing their cases with no distribution to general unsecured creditors. This imposes an unfair risk on the general unsecured creditors and will not be permitted. *See In re Eiland*, 170 B.R. 370, 377–78 (Bankr.N.D.Ill.1994). None of the debtors in these cases, except perhaps the Hunters, have articulated any reason for paying their student loan debts before their other unsecured debts.[14]

## III. CONCLUSION

■ Section 1322(b)(1) is a creditor protection device. *See McCullough*, 162 B.R. at 511; *In re Coonce*, 213 B.R. at 349. It was not intended as a means for debtors to focus solely upon their interests and does not justify unfair discriminatory treatment. *Eck v. Willis (In re Willis)*, 197 B.R. 912, 915 (N.D.Okla.1996). The court is aware that there are substantial protections available to student loan debtors outside the bankruptcy process.[15] The filing of a Chapter 13 case should be a last resort, and indeed provides little relief when the debtor's primary problem is a nondischargeable student loan.

To ensure equity of distribution the court provides the guidelines contained in this opinion. Of course, the determination of whether a particular plan discriminates unfairly is to be made on a case by case basis, and the court invites debtors with unique circumstances to seek a hearing. This judge will not confirm Chapter 13 plans that provide for the payment of interest to student loan creditors, but not to other unsecured creditors; that accelerate the repayment of student loans at the expense of general unsecured creditors; that provide for repayment of 100% of student

---

**12.** Student Loan Default Prevention Initiative Act of 1990, which was part of the Omnibus Budget Reconciliation Act of 1990, Pub.L. 101–508, (Nov. 5, 1990).

**13.** Bankruptcy Reform Act of 1994, § 304(c), Pub.L. 103–394, (Oct. 22, 1994).

**14.** For example, this court routinely permits debtors to preferentially repay traffic court tickets and costs to enable the debtors to reestablish their driver's licenses. The court believes that this treatment furthers the purposes of Chapter 13 by permitting debtors to drive to and from work in order to support themselves and make payments called for by their plans.

**15.** *See, e.g.*, 20 U.S.C. § 1078(c)(3) (forebearance agreement); 20 U.S.C. § 1078(e) (income-sensitive repayment option); 20 U.S.C. § 1078–10 (loan forgiveness for teachers); 20 U.S.C. § 1078–11 (loan forgiveness for child care providers); 20 U.S.C. § 1087 (forgiveness in full for death or disability); 20 U.S.C. § 1087ee (cancellation of loans for certain public service).

loan claims when other unsecured claims are not paid at least 70%; or that provide for the repayment of student loans before other unsecured claims are paid. This judge will permit arrearages on student loans to be paid in full, even though other unsecured claims will not be paid in full, if the student loan is treated as a long term debt pursuant to section 1325(b)(5). Finally, the court encourages debtors to seek discharge of their student loans under section 523(a)(8) in appropriate circumstances.

In the cases before the court, the court will enter no order with respect to Mr. Williams' original plan which has been amended to provide for his student loan to receive the same treatment as other unsecured claims. The plans of the remaining debtors are not capable of confirmation. These debtors will be given a period of 15 days to file amended plans consistent with the guidelines set out in this opinion.