310 B.R. 131 (2004)
In re George J. & Patricia A. HANSON, Debtors.
No. 03-12010-13.
United States Bankruptcy Court, W.D. Wisconsin.
April 21, 2004.
*132 Daniel R. Freund, Eau Claire, WI, for Debtors.

MEMORANDUM DECISION
ROBERT D. MARTIN, Bankruptcy Judge.
When they filed their Chapter 13 case, debtors George and Patricia Hanson ("the Hansons") were under contract to pay $776.94 per month to the U.S. Department of Education ("D.O.E.") to retire student loans. Because they owed the D.O.E. more than $77,000, a last payment would have been due some 99 months later. The Hansons proposed a Chapter 13 plan which would: 1.) pay $175 per month for 36 months to the Chapter 13 trustee to be distributed to creditors including the D.O.E. for any claimed arrearage due on the student loan contract; and 2.) provide that the Hansons would pay directly to the D.O.E. $437.27 per month on their student *133 loans. The D.O.E. consented to this reduced payment "to enhance the feasibility of the plan."
The trustee objected to confirmation of the plan for two reasons. First, the plan unfairly discriminates against a class of unsecured creditors by paying the D.O.E. more than others. Second, the plan proposes direct payments to the D.O.E. in an amount less than called for by the prebankruptcy contract.
1.) Non-dischargeable student loans do not enjoy priority status under 11 U.S.C. § 507. They are generally classified with other unsecured claims. However, 11 U.S.C. § 1322(b)(1) authorizes a Chapter 13 debtor, in formulating a plan, to designate classes of unsecured creditors, as provided in 11 U.S.C. § 1122, which states that "[e]xcept as provided in [11 U.S.C. § 1122(b) ], a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1322(b)(1) further provides that a plan "may ... not discriminate unfairly against any class so designated." Courts have tried with little success to articulate a test for unfair discrimination against a class of claims. In re Leser, 939 F.2d 669, 672 (8th Cir.1991) (four-factor test); In re Williams, 253 B.R. 220, 225 (Bankr.W.D.Tenn.2000) (four-factor test); In re Thibodeau, 248 B.R. 699, 704-05 (Bankr.D.Mass.2000) (four-factor test); In re Brown, 152 B.R. 232, 237^0 (Bankr. N.D.Ill.1993) (legitimate basis for classification test), reversed under the name McCullough v. Brown, 162 B.R. 506 (N.D.Ill.1993); In re Lawson, 93 B.R. 979, 984 (Bankr.N.D.Ill.1988) (legitimate basis for classification test). Certainly not all discrimination is unfair.
Under 11 U.S.C. § 1322(b)(5), a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5) is typically used by debtors to maintain mortgage payments and other long-term secured debt, while curing any arrearage through the plan. In re Bradley, 109 B.R. 182, 183 (Bankr.E.D.Va.1990); In re Wolff, 22 B.R. 510 (9th Cir. BAP 1982); In re Fontaine, 27 B.R. 614, 615 (9th Cir. BAP 1982). This provision has been interpreted by this court to permit current monthly home first mortgage payments to be paid directly to the creditor without deduction of a trustee fee. Payments on all other claims (including home mortgage arrearages) must be made to and through the trustee.
11 U.S.C. § 1322(b)(5) specifically applies to a debtor maintaining payments on unsecured long-term debt. Unsecured long-term debts may include some student loans. "Long-term student loan obligations with payment terms that extend beyond completion of the plan fall squarely within the ambit of section 1322(b)(5)." In re Benner, 156 B.R. 631, 634 (Bankr. D.Minn.1993). While that statement is true, it does not compel the conclusion that the debtor may pay the creditor directly. The trustee's disbursements can certainly be the source of the "maintenance of payments" required by the statute. Furthermore, falling within the ambit of 11 U.S.C. § 1322(b)(5) does not preclude the application of other statutory provisions.
The treatment of long-term unsecured claims under 11 U.S.C. § 1322(b)(1) and 11 U.S.C. § 1322(b)(5) appears to be in conflict with the uniformity of treatment generally required by 11 U.S.C. § 1322(b)(5) and is different from that prescribed in 11 U.S.C. § 1322(b)(1). If there is indeed a conflict (which we have yet to *134 determine because that discrimination may not be unfair), "[t]he existence of a conflict is [a] prerequisite to deciding that a more specific statute prevails over one which is more general." Squillacote v. U.S., 739 F.2d 1208, 1215 (7th Cir.1984). "Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates only to one case or subject within the scope of the general provision, then the particular provision must prevail; and if both cannot apply, the particular provision will be treated as an exception to the general provision." Matter of Thornhill Way I, 636 F.2d 1151, 1156 (7th Cir. 1980).
11 U.S.C. § 1322(b)(5) is specific and clear in its language. 11 U.S.C. § 1322(b)(1) is more general in that it refers to all classes of unsecured claims, not to claims having specific characteristics. "[W]hen we are forced to choose between specific statutory provisions and a general...[one], [a court will] err on the side of specific provisions in the belief that they reflect congressional intent more clearly." Matter of Lifschultz Fast Freight Corp., 63 F.3d 621, 629 (7th Cir.1995). "A specific statute takes precedence over a more general statute." Matter of Johnson, 787 F.2d 1179, 1181 (7th Cir.1986); see also Central Commercial Co. v. C.I.R., 337 F.2d 387, 389 (7th Cir.1964). "11 U.S.C. § 1322(b)(5) would be rendered largely ineffective with respect to unsecured debt if student loans could not be treated thereunder..." In re Benner, 156 B.R. 631, 633-634 (Bankr.D.Minn.1993). So, where it applies, 11 U.S.C. § 1322(b)(5) trumps 11 U.S.C. § 1322(b)(1).
To come within the specific coverage of 11 U.S.C. § 1322(b)(5), the claim must be subject to a schedule of payments which extends beyond the last payment under the plan. This is true for the claim of the D.O.E. Therefore, the Hansons' plan may treat the D.O.E. claim differently from shorter term claims if that different treatment conforms with what is permitted by 11 U.S.C. § 1322(b)(5). What is permitted is curing any default within a reasonable time and "maintenance of payments" while the case is pending. "Maintenance of payments" under 11 U.S.C. § 1322(b)(5) means that the debtor must respect the interest rate and the monthly payment in the original contract during the plan. In re Tavella, 191 B.R. 637, 640-41 (Bankr.E.D.Pa.1996); In re Javarone, 181 B.R. 151, 154 (Bankr.N.D.N.Y. 1995); In re Murphy, 175 B.R. 134, 137 (Bankr.D.Mass.1994).
Prior to bankruptcy, the Hansons owed a monthly payment of $776.94 to the D.O.E. That payment was based on the original principal amount of the student loan and the contract interest rate. The Hansons' Chapter 13 plan, however, proposes a monthly payment in the amount of $437.27 to the D.O.E. "outside of the plan." "Under 11 U.S.C. § 1322(b)(5), all of the payments of a note or contract remain in full force and effect ... A change in the monthly payments does not constitute the 'maintenance of payments' for these purposes." In re Tavella, 191 B.R. 637, 640-41 (Bankr.E.D.Pa.1996). If the plan changes the interest rate or monthly payment, courts hold that the debtor is not maintaining payments for the purposes of 11 U.S.C. § 1322(b)(5). In re Javarone, 181 B.R. 151 (Bankr.N.D.N.Y.1995). So, while a student loan may be treated under 11 U.S.C. § 1322(b)(5) as a long-term debt, the Hansons' plan does not meet the terms of that statute. If the requirements of the specific statute (11 U.S.C. § 1322(b)(5)) are not met, then the more general requirements of 11 U.S.C. § 1322(b)(1) must be observed. The Hansons may not discriminate *135 in favor of D.O.E., except in the way condoned by 11 U.S.C. § 1322(b)(5).
2.) Periodic payments to the trustee and disbursement by the trustee is the normal practice in Chapter 13 cases and a departure from this norm is only appropriate when the debtor demonstrates a significant reason for doing so. In re Gregory, 143 B.R. 424 (Bankr.E.D.Tex.1992); In re Barber, 191 B.R. 879, 885 (D.Kan.1996). For example, this court, like many courts, has drawn a distinction between permitting a debtor to make current mortgage payments directly, but not others. See In re Aberegg, 961 F.2d 1307 (7th Cir.1992).
Most reported decisions refuse to confirm plans that propose to pay certain creditors or classes of creditors directly by the debtor, particularly when the proposed direct payment is to an unsecured claimant. In re Reid, 179 B.R. 504 (E.D.Tex.); In re Veasley, 204 B.R. 24 (Bankr. E.D.Ark.1996); In re Bettger, 105 B.R. 607 (Bankr.D.Or.1989); In re Hartdegen, 67 B.R. 230 (Bankr.N.D.Ala.1986); In re Evans, 66 B.R. 506 (Bankr.E.D.Pa.1986); In re Eby, 38 B.R. 318 (Bankr.D.Or.1984); In re Reines, 30 B.R. 555 (Bankr.D.N.J.1983). In re Gaskin, 79 B.R. 388 (Bankr.C.D.Ill. 1987); In re Gregg, 179 B.R. 828, 830 (Bankr.E.D.Tex.1995); In re Weeden, 7 B.R. 106 (Bankr.D.R.1.1980); In re Blevins, 1 B.R. 442 (Bankr.S.D.Ohio 1979). No justification has been provided by the Hansons for paying the D.O.E. "outside" the Chapter 13 plan.
In conclusion, the debtors' plan cannot be confirmed. It fails to comply with 11 U.S.C. § 1322(b)(5) and fails to demonstrate that its treatment of the D.O.E. claim is not unfair discrimination between classes of unsecured claims. Furthermore, it proposes an impermissible direct payment to D.O.E. For those reasons, the plan cannot be confirmed. It may be so ordered.

ORDER
The court having this day entered its memorandum decision in the above-entitled matter,
IT IS HEREBY ORDERED that the debtors' Chapter 13 plan not be confirmed.