**In re Van Coolidge WEBB III, Carla Justina Webb, Debtors.**

**No. 06–61821-MHM.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 22, 2007.

---

Susan H. Shiptenko, Law Offices of Matthew T. Berry, Atlanta, GA, for Debtors.

Adam M. Goodman, Chapter 13 Trustee, Atlanta, GA, for Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

MARGARET H. MURPHY,
Bankruptcy Judge.

In this Chapter 13 case, Debtors proposed a Chapter 13 plan providing different treatment of unsecured creditors. Sallie Mae Guarantee Services, Inc. and Wachovia Education Finance are the holders of Debtors' educational loans (collectively, the "Student Loan Creditors"). The amended plan proposes to make regular monthly payments directly to the Student Loan Creditors during the term of the plan. Debtors propose a 1% payout to all other unsecured creditors.

### Facts

Debtors filed their joint Chapter 13 case February 21, 2006. Debtors' annualized income is $73,692.00 or $5,450 monthly, from which they support themselves and six dependents. At the time of filing this case, Mrs. Webb had suffered the loss of her job, the addition of three dependent minors following the death of her sister, and an automobile deficiency of approximately $12,000 following Debtors' voluntary surrender of a vehicle. These circumstances led Debtors to file for the protection of Chapter 13.

Claims against Debtors' estate include:

1. A prepetition mortgage arrearage of $3390.58 on a mortgage with $113,925.63 due in principal; the post-petition monthly payments are $1,130.19;

2. A vehicle lien in the amount of $11,901.01, which Debtors' plan proposes to pay at $110.00 a month until September, 2006, then $278.00 a month until the claim is paid in full;

3. A second vehicle lien in the amount of $10,308.11, which Debtors' plan proposes to pay at $80.00 a month until September, 2006, then $278.00 a month until the claim is paid in full;

4. Two student loan claims owed to Sallie Mae to be paid directly in the aggregate amount of $230 a month;

5. A student loan claim owed to Wachovia to be paid directly in the amount of $70.00 a month; and

6. General unsecured claims totaling $21,490 (exclusive of the Student Loan claim), on which debtors' plan proposes to pay a 1% dividend.

Debtors' listed monthly expenses on Schedule J are as follows

1. Mortgage payment of $1130;

2. Utilities totaling $765, comprised of:
   a. $300 for electricity and heating fuel;
   b. $150 for water and sewer;
   c. $180 for telephone; and
   d. $135 for cable;

3. Average home maintenance of $115;

4. Average food expense of $1400;

5. Average clothing expense of $130;

6. Average laundry and dry cleaning expenses of $55;

7. Average medical and dental expenses of $300;

8. Average transportation expense of $400;

9. Auto insurance expense of $155; and

10. Installment payments to Student Loan Creditors of $300 monthly.

Taken together, Debtors' expenses total $4,750 monthly. Debtors' monthly take home pay of $5,450 leaves $700 of disposable income for payment to creditors, resulting in a 1% dividend for general unsecured creditors after payment of liens and priority expenses.

The Chapter 13 Trustee filed objections to confirmation of Debtors' plan on the grounds that the direct payments to the Student Loan Creditors discriminate unfairly against the other unsecured creditors, that the plan is in violation of 1322(b)(10), and that the proposed expenses under Debtors' Schedule J are excessive and unsupported. Chapter 13 Trustee proposes two approaches by which Debtors could overcome the objection. The first is to pay all unsecured debts in full. The second is to increase the Chapter 13 plan payment by the $300 designated for payment to Student Loan Creditors and pay the Student Loan Creditors the same 1% dividend as the other unsecured creditors.

Debtors contend that the first proposal is impracticable (and, therefore, not feasible) because it would require monthly payments of $1,020.00 for 57 months in addition to the $300 a month to the Student Loan Creditors. The Chapter 13 Trustee's second proposal, Debtors argue, would impair their fresh start. Paying the $300 per month student loan payments into the plan for a pro rata dividend to the Student Loan Creditors and other unsecured creditors alike would increase the other general unsecured creditors' dividend by only .2%, and would subject Debtors to postpetition interest and penalties

on their student loan claims that would total up to $3,500 over the plan term.

**Discussion and Conclusions of Law**

Under 11 U.S.C. § 1328(a)(2),[1] student loan debt cannot generally be discharged in a Chapter 13 bankruptcy case. Subject to the requirements of § 1322(a), § 1322(b)(1)[2] provides that a debtor may, in a Chapter 13 plan,

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims; . . .

(5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; . . .

(10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a) except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims[.]

█ Section 1322(b)(10) is a new provision contained in the Bankruptcy Abuse Prevention and Consumer Protection Act

---

**1.** Section 1328(a)(2) refers to 11 U.S.C. 523(a)(8), which exempts student loans from discharge unless they present an undue hardship to the debtor.

**2.** Section 1322(b) is also subject to § 1322(c), which is not applicable to the issues raised by the Chapter 13 Trustee.

("BAPCPA"), applicable to cases commencing after October 17, 2005. On its face, Section 1322(b)(10) purports to prevent the payment of interest to any nondischargeable unsecured creditor unless all other unsecured claims are paid in full. Unfortunately, the commentators and courts have so far been virtually silent on the application of 1322(b)(10). A recent decision, with facts very similar to those in the instant case, however, provides a persuasive discussion of how the conflict between § 1322(b)(5) and (b)(10) should be resolved.

In the case of *In re Freeman*, Case No. 06–10651–WHD (Bankr.N.D.Ga., December 22, 2006)(J.Drake), the debtor's plan provided that the debtor would maintain direct monthly payments to her student loan creditor and would pay her other unsecured creditors through the Chapter 13 Trustee a 1% dividend. The Chapter 13 Trustee objected to confirmation of Debtor's plan on the grounds that the debtor's plan did not comply with 11 U.S.C. § 1322(b), specifically, § 1322(b)(10).

In analyzing the Chapter 13 Trustee's objection, the court noted that § 1322(b)(5) and § 1322(b)(10) appear to conflict with one another, because curing and maintaining payments on a long-term unsecured debt would necessarily mean that the payments on the long-term debt would include interest, and a long-term debt addressed under § 1322(b)(5) becomes nondischargeable under § 1328(a) regardless of whether it is a student loan debt. Employing recognized principles of statutory interpretation,[3] the court concluded that § 1322(b)(5) is the more specific provision and that

> ...Congress intended to permit the cure and maintenance of long-term unsecured debts, notwithstanding the applicability of section 1322(b)(10).... [P]rohibiting the payment of interest on nondischargeable debts would make the cure and maintenance of any long-term debt impermissible. Such a result would be absurd and could not have been intended by Congress.

*Freeman* at page 4. The reasoning in *In re Freeman* is persuasive; accordingly, § 1322(b)(10) is inapplicable to Debtors' proposal to maintain direct payments on their long-term student loan debts.

■ The Chapter 13 Trustee in the instant case has also interposed an objection to Debtors' plan on the grounds that the plan unfairly discriminates against unsecured creditors by providing more favorable treatment to the Student Loan Creditors. Whether curing a default and continuing to make direct contract payments[4] on a long term debt should be subject to unfair discrimination analysis is unsettled. *See In re Brown*, 162 B.R. 506, Appendix A (N.D.Ill.1993). The minority view excepts long-term loan obligations (*i.e.*, for which the payment period extends beyond the life of the plan) from the unfair discrimination analysis under 1322(b)(1). *See In re Jackson*, Case No.

---

**3.** The court cited *In re Bateman*, 331 F.3d 821, 826 (11th Cir.2003), which set forth the principle that "[p]rovisions of [the Bankruptcy Code] are read to be consistent whenever possible...[but][i]f two provisions may not be harmonized, then the more specific provision will control over the general."

**4.** These direct contract payments are sometimes loosely (and misleadingly) referred to as payments "outside the plan." This is a misleading term, because while such payments are not made via the Chapter 13 Trustee but by the debtor directly, the payments are still subject to the provisions of Chapter 13. A payment which is, in fact, made "outside the plan" could create good faith problems for a debtor, interfering with the confirmability of the Plan or the issuance of a discharge.

05–85212, P. 4 (Bankr.N.D.Ga.2006)(J. Mullins), *citing In re Williams*, 253 B.R. 220 (Bankr.W.D.Tenn.2000); *In re Benner*, 156 B.R. 631 (Bankr.D.Minn.1993). Courts that have accepted the minority position permit the debtor's plan to cure defaults and maintain contract payments on long-term unsecured debt even when other unsecured debt will receive less than full payment.

The majority position requires plans that provide full payment of student loan obligations under § 1322(b)(5) to undergo unfair discrimination analysis. *In re Simmons*, 288 B.R. 737, 744 (Bankr.N.D.Tex. 2003). The majority position further concludes that nondischargeability, by itself, is insufficient reason to permit debtors to discriminate against other unsecured claims. *Id. See also, In re Mulkey*, 2005 WL 4659360, 2005 Bankr Lexis 2188 (Bankr.N.D.Ga.2005)(J. Massey). Assuming without deciding the majority position is correct, a determination of whether Debtor's plan discriminates unfairly is appropriate.

■ The most widely-used test to determine whether a plan discriminates unfairly, found in the case of *In re Leser*, 939 F.2d 669, 672 (8th Cir.1991), has four components: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

The first factor for consideration under the *Leser* test is whether the proposed discrimination has a reasonable basis. *Id.* Under 11 U.S.C. § 1328(a)(2), student loan claims of the type Debtors propose to pay directly are not dischargeable. Debtor asserts that because educational loans are nondischargeable, they accrue interest and other fees for any monthly contract payments not paid in full during the term of the plan. Any amounts paid to the educational loan holders will result in fewer dollars available to the remaining unsecured debt claimants, but the accrual of interest and penalties will result in an anomaly: Debtors will owe more to the Student Loan Creditors following termination of the Chapter 13 plan than they owed prior to filing. The statutory requirements are conflicting and impractical to implement, but any construction should not leave Debtors in a worse position as to the Student Loan Creditors than before the Chapter 13 case. This factor weighs in favor of confirmation of Debtors' plan as proposed.

The second *Leser* factor is whether Debtors can carry out a plan without the discrimination. The Chapter 13 Trustee proposed two alternatives: payment to all unsecured creditors in full, or payment of the $300 intended for direct payments to the Student Loan Creditors into the plan funds available for pro rata payment to all unsecured creditors and disbursed by the 13 Trustee. Payment in full, the first alternative, would require Debtors to pay into the plan $1020.00[5] a month for 57 months—more than the 36–months applicable commitment period. Debtors' current income is insufficient to increase the plan payment to that greater amount. If Debtors had only one or two children of school age, additional employment for one or both Debtors might be logical; in this case, however, Debtors are both fully employed **and** Debtors have taken on three additional dependents, for a total of six.

Chapter 13 Trustee's second alternative retains the same payments as in Debtors'

---

5. This amount is in addition to the $300/ month payable to the Student Loan Creditors.

initially proposed plan, but specifies that all payments be paid to and disbursed by the Chapter 13 Trustee with the student loan debt in the same class with other unsecured debt. While Debtors could make these payments (as they remain the same), the dividend to unsecured creditors will increase by only .2% (while the fee to the Chapter 13 Trustee would increase as a result of disbursing $300 more per month), and at the end of the plan's term, Debtors will face interest and penalties of approximately $3,500 that will have accrued on the student loan debt during the Chapter 13 proceeding. As a result of that accrual of interest and penalties, Chapter 13 will have offered no substantive benefit to Debtors. Therefore, because Debtors cannot propose a feasible plan that will not leave them with a large accrued nondischargeable debt, this factor weighs in favor of confirmation.

The third *Leser* factor is whether the discrimination is proposed in good faith. Debtors argue that their fresh start will be impeded if they are not allowed to make direct payments to the Student Loan Creditors because the student loan debts will accrue postpetition interest and penalties. Debtors propose to continue their contractual payments only on a long-term debt, which may be the most practical solution to the statutory dilemma Debtors face. Thus, this factor weighs in favor of confirmation.

The final *Leser* factor is whether the degree of discrimination is directly related to the basis of the discrimination. Here, the degree of discrimination appears proportionate to the basis for the discrimination. Debtors argue that they seek to avoid paying penalties and interest by paying the educational lenders a combined $14,100 over the life of the plan. Without the direct payments, Debtors would emerge from bankruptcy owing $3,500

more to the Student Loan Creditors than they did before the case was filed, and the other unsecured creditors will receive a negligible benefit in comparison. Therefore, this factor also weighs in favor of confirmation.

A contrary result was reached in the case of *In re Mulkey*, 2005 Bankr Lexis 2188, 2005 WL 4659360, 55 C.B.C.2d 539 (Bankr.N.D.Ga.2005)(J. Massey). In *Mulkey*, the debtor argued that failure to pay the educational loans in full would negate the benefits of a fresh start. *Id.* at *2, 2005 Bankr.Lexis 2188 at *6. The court held that, although debtors are entitled to a fresh start, nothing in the Bankruptcy Code justifies discriminating in favor of educational loans simply because they are nondischargeable. *Id.* at *4, 2005 Bankr.Lexis 2188 at *13. The court concluded that the fresh start is only one purpose of the Code; another is the "fair treatment and strict prioritization of claims." *Id.* at *2, 2005 Bankr.Lexis 2188 at *6.

Other cases support the conclusion reached in *Mulkey*. In *Brown*, 162 B.R. 506, (N.D.Ill.1993), the court viewed creditor classification from the perspective of the discriminated-against creditor class to determine whether a classification was unfair. *Brown* at 512. The district court in *Brown* specifically declined to apply the *Leser* test, stating that the *Leser* test "does not provide much in terms of functional analysis." *Id.* at 511. In *Brown*, the debtors had placed student loans in a different class and provided the other non-student loan unsecured creditors a substantially reduced dividend. *Id.* at 507. The *Brown* court concluded that "no chapter 13 plan can be approved that treats unpaid student loans more favorably than other unsecured debts solely because they are student loans." *Id.* at 517. Appendix A, attached to *Brown*, illustrates that pay-

ment in full to student loan creditors and reduced payments to other unsecured creditors have been held unfair in the majority of cases.

The Bankruptcy Appellate Panel in the case of *In re Bentley,* 266 B.R. 229, 232 (1st Cir. BAP 2001), took a slightly different approach, choosing instead to focus on the overall fairness of the plan to creditors. In *Bentley,* the debtors proposed to pay their student loan debt in full, but proposed a dividend of only 3% to the other unsecured claims. *Id.* The court explained that Congress had the chance to give student loan claims priority status as well as nondischargeability, but chose not to do so. *Id.* at 236. Therefore, the court in *Bentley* denied confirmation of the plan.

These three cases (*Mulkey, Brown, and Bentley)* are distinguishable from the instant case because the debtors in those cases treated student loan claims as short-term debt and provided substantially greater dividends throughout the course of the plan. Debtors in the instant case propose to continue direct payments to the Student Loan Creditors as long-term debt in the same amount provided by the original contract.

The fundamental difference between the instant case and the cases following the majority view is that in the latter, the debtors proposed a 100% dividend to the educational lenders, and a substantially reduced dividend to the other unsecured creditors. In essence, the debtors were creating their own "super fresh start" by using all available resources to pay down the educational lenders without providing a corresponding benefit to the other unsecured creditors. In the instant case, Debtors do not propose additional payments to the educational lenders, but only the continuation of the terms of the contract with the balance of the educational loans remaining due upon completion of the plan.

In the case of *In re Jackson,* Case No. 05–85212, P. 6 (Bankr.N.D.Ga.2006) (Mullins), with facts similar to those in the instant case, the court held that employing § 1322(b)(5) to continue paying the monthly student loan payments directly was not unfair. *Jackson's* debtor owed $81,485.31 in total debt, of which student loan debt totaled $73,000.01. *Id.* at 1. The debtor proposed to pay the educational debt according to the contract by direct payment, while paying the other unsecured creditors a 1% dividend. *Jackson* reasons that a balance should be found between the interest of the creditors in receiving equal treatment and the debtor's interest in receiving a fresh start. *Id.*

Balancing the interests in the instant case supports confirmation of the plan. Debtors' student loan debt is a long term debt, and accounts for approximately $10,000 of the $31,131.00 in unsecured debt. If Debtors are not allowed to continue their direct payments to the Student Loan Creditors, they may face the consequences of default upon completion of their Chapter 13 plan payments, and such a result conflicts with the purpose of a fresh start. If Chapter 13 is the required alternative to Chapter 7, it should be a remedy that works.

The alternative, disallowing direct payments to the Student Loan Creditors, would result in payment to the other, dischargeable, unsecured creditors of only an additional .2% dividend, which is negligible. Providing full payments to all unsecured creditors is not feasible unless Debtors have an additional source of funds, and none has been shown. As discussed above, debtors cannot increase their income by finding additional employment, and as discussed below, Debtors cannot increase their disposable income by decreasing living expenses. Because Debtors will suffer needless accrual of interest and penalties if

they cannot make direct payments to the Student Loan Creditors, and unsecured creditors will enjoy a disproportionately small benefit otherwise, balancing the equities in the instant case supports confirmation of Debtors' plan as proposed. As the court reasoned in *Jackson*, if a debtor cannot favor nondischargeable student loan debt in a Chapter 13 plan, he may choose to convert to a Chapter 7, in which event, unsecured creditors would likely receive *no* dividend. Payment of a 1% dividend provides more to other unsecured creditors than they would likely receive in a Chapter 7.

The choice Congress made to endow student loan debt with nondischargeable status sends a strong signal of intent that should not be easily ignored. Balancing the major policies of Chapter 13, including the fresh start, and the strong intent of Congress to elevate the payment status of student loans leads to the conclusion that the only logical way in this case to implement both policies is to allow Debtors' plan to be confirmed. This conclusion is, however, limited to the specific facts in this case and other cases may present other facts that would require further inquiry or lead to a different conclusion.

Chapter 13 Trustee has suggested that Debtors' living expenses are excessive. Debtors are allowed to budget only for expenses that are "reasonably necessary." 11 U.S.C. § 1325(b)(2). The additional three children that Debtors have included in their household present significant challenges. Second-guessing the budget for a family newly expanded from five to eight individuals is fraught with extensive opportunity for blind judicial error. Debtors' budget does not appear excessive given the size of their family. Accordingly, it is hereby

ORDERED that Chapter 13 Trustee's objections to confirmation on the basis of § 1322(b)(10), unfair discrimination, and excessive expenses are *overruled*. It is further

ORDERED that Debtor's plan is *confirmed*.